EVERETTE ALM *et al.*, Plaintiffs-Appellants and Cross-Appellees, *v.* GENERAL TELEPHONE COMPANY OF ILLINOIS, Defendant-Appellee and Cross-Appellant.—(KEVIN ALM *et al.*, Minors by their mother and next friend, KAY ALM, Plaintiffs.)

(No. 12506;

Fourth District—April 24, 1975.

Robert Weiner and Michael J. Costello, both of Springfield, for appellants.

Robert D. Winters and Glen A. Featherstun, both of Armstrong, Winters, Prince, Tenney, & Featherstun, of Decatur, for appellee.

Mr. PRESIDING JUSTICE SIMKINS delivered the opinion of the court:

Plaintiffs, Everette and Kay Alm, appeal from a directed verdict entered against them by the trial court in their conspiracy action against defendent General Telephone, Everette Alm's former employer. The following issues are raised in this court: (1) Whether the trial court erred in entering a directed verdict in favor of the defendant, (2) Whether the trial court erred in refusing certain offers of proof by plaintiff, (3) Whether the trial court erred in admitting the results of a lie detector test into evidence, (4) Whether the trial court erred in refusing to allow plaintiff to cross-examine a Mr. Livingston under section 60, (5) Whether the trial court erred in restricting the cross-examination of

a Joseph Profilet, and (6) Whether the trial court erred in dividing equally the expenses of discovery.

On August 20, 1971, plaintiffs filed an amended complaint alleging that on July 18, 1969, plaintiff Everette Alm was accused by defendant of fondling a minor female child, and that on July 28, 1969, plaintiff's employment was terminated by defendant. The complaint alleged that defendant had conspired with the Harris-McBurney Company to terminate plaintiff's employment with said company and had conspired with other telephone companies to deny plaintiff employment. The complaint further stated that because of the alleged conspiracy, plaintiff was deprived of his livelihood.

At the jury trial Reynolds J. Stefani, defendant's labor relations manager, testified that the Harris-McBurney Company of Michigan had done independent contractual work for defendant for many years. He stated that based on an investigation and on information accumulated he requested and received an oral resignation from Mr. Alm. He also stated that he had phone conversations with a Mr. Browning of the International Brotherhood of Electrical Workers Local 51 in the late summer or early fall of 1969 regarding the fact that Mr. Alm was working for a contractor of defendant. He stated that he told Browning that General Telephone had the right to exclude from any of their jobs or property, individuals who are unqualified, undesirable, or do not meet their employment standards.

William Livingston, a supervisor for the Harris-McBurney Company, testified that his job was to supervise employees of Harris-McBurney on the property of the telephone companies. He stated that it was also his job to procure employees for General Telephone jobs, and he would call the local unions to obtain these men. He stated that in the late summer or fall of 1969 his company was doing work for defendant at Argenta, Illinois. He stated that a daily work record was submitted to defendant by his company to show defendant the employees working on the Argenta job.

John Browning, the assistant business manager for local 51 of the I.B.E.W., testified that Mr. Alm is a member of the union. He stated that in the late summer or early fall of 1969 he had a conversation with Mr. Livingston regarding Mr. Alm.

Charles Foster, a former employee of Harris-McBurney, testified that in the late summer or early fall of 1969 he was foreman of a job at Argenta, Illinois, and that upon instructions he fired Mr. Alm.

Plaintiff testified that prior to July 1969, he was a switchman for defendant. Plaintiff then proceeded to give a detailed recital of his whereabouts on July 17, 1969, and concluded by stating that he did not fondle

Cindy O'Dell, a 15-year-old girl, nor was he at the O'Dell residence on the date in question. He stated that he first heard of Cindy O'Dell when someone from the defendant security department accused him of molesting said minor. He stated that because of the allegations he was suspended on July 18, 1969, and terminated on July 28, 1969. He further stated that he then began to unsuccessfully seek employment at other telephone companies, but was only able to obtain various part-time employment at companies not connected with the telephone industry. Plaintiff further stated that he did obtain a job through the union and John Browning with Harris-McBurney at Argenta, Illinois, doing a contract job for General Telephone. He stated that he was fired after 1 week on the job, and that he called Mr. Livingston who also told him he had been fired. Plaintiff then stated that several weeks after the Argenta job he obtained work through the union and John Browning from Harris-McBurney at Belvidere, Illinois. He stated that while on that job he noticed inside the door of a General Telephone building a list of people who were not to be hired by General Telephone or their affiliates.

On cross-examination plaintiff testified over objection that on July 25, 1969, at the suggestion and insistence of the defendant he took a lie detector test in Chicago regarding the O'Dell incident, and that the results were detrimental to him.

Charles Foster was recalled and testified that he received instructions to fire plaintiff from the Argenta job. He stated that his supervisor was Mr. Livingston. He also testified that he filed a daily work report showing the employees on the Argenta job and sent it to defendant.

John Browning was recalled and testified that he made an independent investigation of the incident involving defendant, and that his facts didn't agree with the information obtained from Stefani. Various witnesses were then called by plaintiff and testified that plaintiff was with them at the relevant times on July 17, 1969.

At the close of plaintiff's evidence defendant moved for a directed verdict. The motion was granted by the trial court on August 29, 1973. Plaintiff's post-trial motion was denied on September 24, 1973.

■■ Plaintiff contends that the trial court erred in directing a verdict at the close of its evidence because a prima facie case of conspiracy had been established. We do not agree. Under the rule formulated in *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 510, 229 N.E.2d 504, "verdicts ought to be directed * * * only in those cases in which all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." We find this language to be an apt description of the instant case.

■■ A conspiracy is an agreement between two or more persons to do an unlawful act or to do a lawful act by unlawful means (*National Steel & Copper Plate Co. v. Angel Research, Inc.*, 39 Ill.App.2d 419, 188 N.E.2d 500, 503). The burden of proof in such cases always lies with the plaintiff, and although a conspiracy may be proved by indirect and circumstantial evidence, the evidence adduced must be clear and convincing. (*Bimba Mfg. Co. v. Starz Cylinder Co.*, 119 Ill.App.2d 251, 256 N.E.2d 357; 11 I.L.P. *Conspiracy* § 36, at 116.) The complaint here alleged that defendant had conspired with Harris-McBurney and other telephone companies to deprive plaintiff of his livelihood. The evidence adduced by plaintiff, however, falls far short of the "clear and convincing" evidence necessary to establish a conspiracy cause of action.

■■ In order to establish the alleged conspiracy plaintiff devotes a substantial amount of its evidence to attempting to disprove the allegations involving the July 17 incident. Whether defendant, however, rightfully or wrongfully terminated defendant is irrelevant on the issue of whether a conspiracy was proved. To establish that defendant conspired with Harris-McBurney to terminate plaintiff's employment with Harris at Argenta, Illinois, plaintiff relies on the testimony of Stefani, defendant's labor relations manager, who stated that General Telephone has the right to exclude from any of their jobs or property individuals who are unqualified or undesirable. Plaintiff also cites the testimony of Foster who stated that he fired plaintiff from the Argenta job because of instructions from Livingston, a Harris McBurney supervisor. It was also established that Foster sent defendant a daily list of employees who work for Harris at the Argenta job. This evidence falls short of the clear and convincing testimony necessary to establish a conspiracy between *defendant and Harris McBurney*. Indeed, plaintiff admitted that several weeks after being fired by Harris from the Argenta job he obtained employment through the union from Harris McBurney at Belvidere, Illinois. Plaintiff also adduces evidence regarding the existence of a blacklist posted by defendant. Nevertheless, there is no evidence that plaintiff's name was on said list. Plaintiff also contends that defendant conspired with other phone companies to deprive plaintiff of his livelihood. There is evidence adduced that plaintiff was unable to secure employment with various other phone companies. There is, however, absolutely no evidence adduced linking these unilateral actions to defendant. The trial court was correct in entering a directed verdict in the instant case.

Plaintiff also contends that the trial court erred in refusing certain offers of proof by plaintiff regarding the testimony of Everette Alm, Charles Foster, John Browning, and Richard Carr. The offers of proof

of Everette Alm were that he would state that he was told by Foster that Livingston told him that General Telephone did not want Everette Alm working on their property or job, that he would state that Livingston told him that General Telephone did not want him on their property at any time or place, that he would state that Dale Eucher, defendant's personnel director, told him that he would never get a job with a telephone company anywhere. The offers of proof of Charles Foster were that he would state that Livingston told him that General Telephone said that Everette Alm could not work on any Harris-McBurney job, that he would state that Livingston told him that Alm must be fired on orders of General, and that he would state that Livingston told him that he would try to employ Alm elsewhere. The offers of proof of Browning were that he would state that Stefani told him that Alm was not the type of individual General wanted working on their property, that he would state that Livingston stated that General had called and told him to get rid of Alm, and that he would state that General has a blacklist. The offer of proof of Carr, an assistant business agent of local 51 of the I.B.E.W., was that he would state that Stefani told him that General has a blacklist.

■■ We find that the trial court did not err in denying the offers of proof. It is true that once the existence of a conspiracy has been established by clear and convincing evidence, the declarations or admissions of one coconspirator are admissible against other coconspirators as an exception to the hearsay rule. (*Tribune Co. v. Thompson*, 342 Ill. 503, 174 N.E. 561; *Lasher v. Littell*, 202 Ill. 551, 67 N.E. 372; *Marcus v. Ratsky*, 198 Ill.App. 496; 18 I.L.P. *Evidence* § 176, at 294.) However, this exception is not applicable here because the existence of an agreement between defendant and Harris McBurney or any other telephone company to wrongfully deprive plaintiff of his livelihood had not been established by clear and convincing evidence.

■■ Plaintiff also contends that the trial court erred in admitting into evidence the results of a lie detector test taken by plaintiff regarding the O'Dell incident. Plaintiff cites as authority section 54.1 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 54.1). However, section 54.1 merely states that the court in a civil case shall not require or suggest that any party take a lie detector test. This provision is inapplicable here for as appellant states in his brief "plaintiff voluntarily agreed to take a lie detector test." We further note that whether plaintiff was innocent or guilty of the alleged incident and whether defendant rightfully or wrongfully discharged plaintiff are not issues in determining whether plaintiff established a prima facie case of conspiracy. Plaintiff then was not preju-

diced in any fashion by the admission into evidence of the test results.
■■ It is further contended that the trial court erred in refusing to allow plaintiff to cross-examine a Mr. Livingston, under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 60). This argument is without merit. Section 60 states that "[u]pon the trial of any case any party thereto or any person for whose immediate benefit the action is prosecuted or defended, or the officers, directors, managing agents or foreman of any party to the action, may be called and examined as if under cross-examination at the instance of any adverse party. * * *" We note that Livingston is an employee of and supervisor for Harris McBurney, and neither Livingston nor Harris McBurney is a party to the instant action. Therefore, plaintiff was precluded from calling Livingston as a section 60 witness.

It is contended that the trial court erred in restricting the cross-examination of a Joseph Profilet, the safety supervisor of defendant. Plaintiff states that Profilet was not allowed to testify to conversations he had with General Telephone of Wisconsin which would show defendant's policy. Profilet was called by plaintiff under section 60. He stated that he knew Roy Brounacker of Madison, Wisconsin, and that he knew that Brounacker made an inquiry of defendant regarding plaintiff's application for a job at General Telephone of Wisconsin. He stated that Brounacker talked to a Mr. Simpson about plaintiff, and that he knew that plaintiff had applied for the job because Simpson told him. He was then asked, in essence, what Simpson told Brounacker about plaintiff. The hearsay objection to this question was properly sustained by the trial court. He then stated that he did not know the general practice of application referrals in the General system and was excused. Our reading of this testimony indicates that plaintiff's examination of this witness was not improperly restricted in any fashion.

■■ It is finally contended that the trial court erred in dividing equally the expenses of discovery. Seven days before the beginning of the trial plaintiff filed a motion to produce which stated, "This motion assumes that the parties affected will ascertain and allocate amongst themselves the expenses involved in initially securing and reproducing the items to be produced. If such is not effected amicably, this contemplates further proceedings * * *." On August 6, 1973, the court granted plaintiff's motion to produce on the condition "that one-half of expenses, to-wit: $2,297.50, to be paid [by plaintiff] within 72 hours." Supreme Court Rule 201(b)(2) (Ill. Rev. Stat. 1973, ch. 110A, par. 201) states that the trial court may apportion the expenses involved in initially securing and furnishing the discoverable material "in such manner as is just." We clearly find no abuse of discretion in so allocating the costs

of discovery here in light of the nature of the action, the geographical problems involved, and the fact that plaintiff's motion to produce expressly requested some type of allocation of discovery costs.

Accordingly, for the reasons stated above the judgment of the circuit court of Macon County is hereby affirmed.

CRAVEN and GREEN, JJ., concur.