THE ILLINOIS TRAFFIC COURT DRIVER IMPROVEMENT EDUCATIONAL FOUNDATION *et al.*, Plaintiffs-Appellants, v. THE PEORIA JOURNAL STAR, INC., *et al.*, Defendants-Appellees.

Third District   No. 3—85—0455

Opinion filed June 20, 1986.

Louis E. Olivero and Gary W. Wangler, both of Peru, for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Gabriel Rodriguez, Assistant Attorney General, of Chicago, of counsel), for appellees Stephen Covey and John Barra.

John R. Pusey, of Vonachen, Cation, Lawless, Trager & Slevin, of Peoria, for other appellees.

JUSTICE WOMBACHER delivered the opinion of the court:

The Illinois Traffic Court Driver Improvement Foundation, a defensive-driving program for traffic offenders, and its director, Dato Olivero, brought a 23-count action in Peoria County against various media defendants and State of Illinois officials. Among the defendants were Stephen Covey, then chief judge of the Tenth Judicial Circuit (Covey), and John Barra, the Peoria County State's Attorney (Barra). The counts directed against these two defendants attempted to state causes of action based upon (1) defamation, (2) conspiracy to defame and to interfere with a business relationship, and (3) violations of section 1983 of the Federal Civil Rights Act (42 U.S.C., sec. 1983 (1983)). The Honorable Dennis K. Cashman of the Eighth Judicial Circuit was specially assigned to hear the case.

The trial court granted Covey and Barra's motions to dismiss the counts against them and found no just reason to delay enforcement or appeal of its order, from which plaintiffs appeal. We affirm.

The lawsuit stems from three articles which appeared in the Peoria Journal Star concerning the plaintiffs' driver improvement program. One article stated that the plaintiffs misrepresented the program's affiliation with the State of Illinois and the Illinois Chief Judges' Association, and that the director misrepresented his own credentials. A second article reported remarks Dato Olivero allegedly

made in addressing one of his driver improvement classes, referring to corruption in the Illinois judicial system. Another article stated that Chief Judge Covey and State's Attorney Barra were withdrawing their support for the plaintiffs' program because of complaints from program participants who believed that Olivero was saying that the judges and State's Attorneys take illegal payments for traffic violations.

Specifically as to Covey and Barra, the amended complaint alleged (1) that each had issued administrative directives suspending participation in plaintiffs' program without first providing plaintiffs with notice and a hearing, thereby depriving plaintiffs of a constitutionally protected property interest without due process of law in violation of section 1983; (2) that Covey, Barra and the Journal Star reporter, Deborah Goeken, had conspired to defame the plaintiffs and to interfere with the administration of the program, thereby harming the plaintiffs' interests protectable under section 1983; (3) that Covey had defamed Dato Olivero by making untrue statements that he "had been operating his program for years using an apparently fabricated association with the State's [j]udicial [s]ystem," and that the program is not connected to the Illinois Chief Judges' Association. The plaintiff further alleged that Judge Covey made the statements maliciously "in that they were deliberately and intentionally worded, phrased and published in a scandalous, shocking and horrifying manner."

■■ We shall direct our initial attention to the third item in the preceding paragraph, the defamation count against Judge Covey. The trial court dismissed count XXI on the basis that the statements were made in the defendant's official capacity as chief judge and in furtherance of his judicial function in that role, and therefore the defendant was entitled to judicial immunity. We agree.

The United States Supreme Court defined the scope of judicial immunity very broadly in *Stump v. Sparkman* (1978), 435 U.S. 349, 55 L. Ed. 2d 331, 98 S. Ct. 1099, holding that "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.' [Citation.]" 435 U.S. 349, 356-57, 55 L. Ed. 2d 331, 339, 98 S. Ct. 1099, 1105.

A judge enjoys absolute immunity only for acts performed in his "judicial" capacity, which the Supreme Court in *Stump* said is determined according to "the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial ca-

pacity."

The plaintiff attempts to impose liability on the defendant with the argument that his acts were administrative, rather than judicial. This argument is without merit because a judge, and particularly a chief judge, has many administrative duties which are part of his normal functions, and no less "judicial" than the act of presiding over a courtroom.

This court will take judicial notice that the disposition of traffic violations and the exercise of the sentencing alternative of court supervision are matters which fall clearly within the jurisdiction of the circuit courts. Pursuant to that jurisdiction, the plaintiffs' program had for many years been the recipient of referrals from the Tenth Judicial Circuit. Consequently, we do not find that the trial court erred in ruling that the statements Judge Covey made in conjunction with the termination of those referrals were in furtherance of his judicial function as chief judge.

■■ We further find that this case is easily distinguishable from *Harris v. Harvey* (7th Cir. 1979), 605 F.2d 330, in which the Seventh Circuit Court of Appeals refused to shield the defendant circuit judge by immunity where he had conducted more than a year-long racially motivated campaign to have the plaintiff dismissed from the police force. The court found that the defendant's *repeated* communications to the press and to city officials, many of them while plaintiff was awaiting trial on criminal charges, were "undertaken in the 'absence of all jurisdiction,'" citing the standard enunciated in *Stump v. Sparkman*. 605 F.2d 330, 336.

In contrast, the present case presents an isolated instance of public comment by Judge Covey regarding a subject appropriate for judicial attention. This was nothing remotely similar to the personal vendetta conducted in *Harris v. Harvey*.

Defendant Covey also challenges the sufficiency of count XXI for the first time on appeal on the grounds that the plaintiff failed to allege the identity of the third party to whom publication of Covey's statements was made. The article which appeared in the Peoria Journal Star on the day that Judge Covey was alleged to have published his defamatory remarks contained statements of the nature pleaded in count XXI. However, the newspaper article does not attribute the remarks to Covey, and the complaint does not allege publication of the remarks in the newspaper article. While this presents an interesting question, we are limited by the doctrine of waiver from addressing the issue because of this defendant's failure to raise it in the trial court. *Lemke v. Kenilworth Insurance Co.* (1985), 109 Ill. 2d 350, 487

N.E.2d 943.

■■ Next, we shall turn to the trial court's dismissal of counts XIV and XVII (against Barra) and XIX and XXII (against Covey). These four counts allege that the issuance of orders or directives by the State's Attorney and chief judge suspending the participation of the county prosecutors and judges in the Tenth Judicial Circuit in plaintiffs' program triggered the plaintiffs' right to notice and hearing pursuant to the fourteenth amendment (U.S. Const., amend. XIV). The plaintiffs allege that the denial of such protection entitles them to relief under section 1983.

Section 1983 provides a remedy to persons who suffer "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by persons acting under the color of State law. (42 U.S.C. sec. 1983 (1983).) In *Paul v. Davis* (1976), 424 U.S. 693, 47 L. Ed. 2d 405, 96 S. Ct. 1155, the Supreme Court explained that the fourteenth amendment is not violated by "every legally cognizable injury which may have been inflicted by a state official acting under 'color of law.'" (424 U.S. 693, 699, 47 L. Ed. 2d 405, 412, 96 S. Ct. 1155, 1159.) One must identify a constitutionally protected liberty or property interest to trigger the due process protections of the fourteenth amendment. *Board of Regents v. Roth* (1972), 408 U.S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701.

The plaintiffs assert that the defendants' actions deprived them of a reasonable expectation of continued referrals from the Tenth Judicial Circuit, based upon past performance. It is undisputed that the former arrangement between the circuit courts and the plaintiffs was not based upon a contract or statute. The plaintiffs had no more than a unilateral expectation (a "pious hope," as it were) that the relationship would continue.

This is not an interest of the sort that is safeguarded by due process. As the United States Supreme Court stated in *Board of Regents v. Roth*:

> "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth* (1972), 408 U.S. 564, 577, 33 L. Ed. 2d 548, 561, 92 S. Ct. 2701, 2709.

In the companion case to *Roth, Perry v. Sindermann* (1972), 408 U.S. 593, 33 L. Ed. 2d 570, 92 S. Ct. 2694, the Supreme Court went on further to say:

> "A person's interest in a benefit is a 'property' interest for due

process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." 408 U.S. 593, 601, 33 L. Ed. 2d 570, 580, 92 S. Ct. 2644, 2699.

■ The plaintiffs have not alleged any interest of the nature described in *Roth* and *Perry*. Therefore, the trial court correctly held that the plaintiffs demonstrated no right, privilege or immunity protectable by the provisions of section 1983.

■ We now address the plaintiffs' theory of liability under section 1983 for the defendants' alleged conspiracy to defame and to interfere with business relations. The gravamen of counts XV, XVII, XX, and XXII is that Covey and Barra conspired with the reporter, Deborah Goeken, to injure plaintiffs' personal and business reputation and goodwill by the writing of the newspaper articles in question.

The overt acts alleged in furtherance of the conspiracy are that Covey and Barra caused Goeken to attend the plaintiffs' program and to speak with dissatisfied participants in the program; saw that Goeken received letters, correspondence, notes and memoranda regarding the program; discussed the program with her, having no knowledge of that of which they spoke; and encouraged Goeken to write an article.

As the basis for its dismissal of these counts the trial court cited the absence of any protected interest which would entitle plaintiffs to invoke section 1983, the failure to state a cause of action for conspiracy, and the defendants' immunity from liability as to these, and all other counts directed against them.

Plaintiffs cite the Fifth Circuit case of *Marrero v. City of Hialeah* (5th Cir. 1980), 625 F.2d 499, as authority for their claim that defamation by the government which results in injury to one's business reputation is actionable under section 1983, when business reputation is a property interest recognized under applicable State law. We agree that *Marrero* stands for that proposition, although we do not find it helpful in the case on review.

Before this court can proceed to the inquiry of whether Illinois law recognizes a property interest in one's business reputation, we must initially determine whether a tort was committed. Whether the plaintiffs have an actionable section 1983 claim depends upon whether they have sufficiently alleged tortious behavior on the part of these officials.

The counts in question allege that Covey, Barra and Goeken conspired to defame the plaintiffs by doing various acts as recited previously herein. The trial court correctly observed that none of the acts

were themselves unlawful. It is undisputed that the alleged object of the conspiracy was accomplished: the newspaper articles containing the alleged defamatory statements were published. Therefore, the trial court found, the conspiracy was completed and no longer actionable, and the plaintiffs' cause of action must rise or fall on the alleged defamation itself.

Although neither we nor apparently the defendants have been able to find any Illinois authority holding precisely to this effect, it is well settled that the mere allegation of a conspiracy does not in and of itself constitute an allegation of wrongful acts upon which liability may be predicated. Rather, it is the act performed in pursuance of the agreement that may create liability. *Goetz v. Avildsen Tool & Machines, Inc.* (1980), 82 Ill. App. 3d 1054, 402 N.E.2d 555; *Montgomery Ward & Co. v. United Retail, Wholesale & Department Store Employees, C.I.O.* (1948), 400 Ill. 38, 79 N.E.2d 46.

American Jurisprudence 2d indicates that "[s]ince damage must be shown in a civil action based on a conspiracy, no cause of action can exist in the absence of an overt, tortious, or unlawful act committed in furtherance of the conspiracy." (16 Am. Jur. 2d, Conspiracy sec. 51. See *Nalle v. Oyster* (1912), 230 U.S. 165, 184, 57 L. Ed. 1439, 1446, 33 S. Ct. 1043.) "In this sense it has also been said that an unexecuted conspiracy does not impose civil liability." 16 Am. Jur. 2d, Conspiracy sec. 51.

■ Thus, while the trial court may not have been completely correct in ruling that the alleged conspiracy is no longer actionable once the agreement has been carried out, reading *Nalle, Goetz* and *Montgomery Ward* together, we conclude that there is no cause of action for conspiracy unless something is done, which, without the conspiracy, would give rise to a claim for relief. (See also 16 Am. Jur. 2d, Conspiracy sec. 52.) In that sense, the trial court's statement that the plaintiffs' claim "must rise or fall on the alleged defamation" was a correct statement of the law.

The United States Supreme Court has addressed the question of liability for conspiracy to publish libel when the alleged libel was privileged, and thus not actionable, because it was an essential part of a pleading in a former proceeding between the parties. The Supreme Court held, in *Nalle v. Oyster* (1912), 230 U.S. 165, 57 L. Ed. 1439, 33 S. Ct. 1043, that in those circumstances it followed that a conspiracy to publish the alleged libel was not actionable.

■ We find the present case to be analogous to the situation in *Nalle.* The alleged defamation was held by the trial court to be nonactionable with respect to both Covey and Barra. We have affirmed

the ruling that Covey's remarks were protected by judicial immunity, and although it is not an issue before us in this appeal, the trial court dismissed a defamation count directed against Barra on the basis of the innocent-construction rule. Consequently, since the plaintiffs have no right of action for damages based on defamation, the alleged conspiracy to defame cannot be the subject of a civil action.

■ The plaintiffs argue, alternatively, that Covey and Barra may be held liable as co-conspirators for Goeken's allegedly libelous newspaper articles. We also find this argument to be without merit.

The plaintiffs rely on *Madison v. Purdy* (5th Cir. 1969), 410 F.2d 99, a section 1983 action against the State's Attorney of Dade County, Florida. The court ruled that liability for conspiracy could be imposed upon the defendant for the wrongful acts of one of his assistants, which were allegedly outside the scope of the assistant's authority and, therefore, not protected by prosecutorial immunity. In so holding, however, the court cited the following from one of its earlier opinions, *Nesmith v. Alford* (5th Cir. 1963), 318 F.2d 110, 126:

> " 'Of course, for a claim under [42 U.S.C.] Section 1983, a conspiracy as such is not an indispensable element as it is under Section 1985. But it may be charged as the legal mechanism through which to impose liability on each and all of the defendants without regard to the person doing the particular act. *Conspiracy is asserted in that situation on more or less traditional principles of agency, partnership, joint venture and the like.'* " (Emphasis added.) *Madison v. Purdy* (5th Cir. 1969), 410 F.2d 99, 102.[1]

In *Madison*, the plaintiffs alleged that the defendant State's Attorney had authorized and directed the acts of his assistant, rendering agency principles applicable to that conspiracy. In the case at bar, the amended complaint contains no allegation that Goeken was acting under the direction or control of Covey or Barra, or of any agreement existing between the parties. It merely alleges the conclusion that they conspired to injure the plaintiffs. Therefore, in view of the plaintiffs' failure to plead facts which would support a finding of agency, partnership or joint venture, we cannot find that Covey and Barra may be held liable for Goeken's actions.

■ Returning, finally, to the issue of liability under section 1983,

---

[1]We note that *Madison v. Purdy* preceded the United States Supreme Court's decision in *Monell v. Department of Social Services* (1978), 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018, holding that a superior may not be held liable under section 1983 for the unconstitutional conduct of his or her subordinates on the basis of respondeat superior.

we conclude that the trial court properly dismissed counts XV, XVIII, XX, and XXII on the grounds that the defendants committed no wrongful acts which would give rise to liability for any injury to the plaintiffs.

For the foregoing reasons, the order of the circuit court of Peoria County dismissing the amended complaint as to Stephen Covey and John Barra is affirmed.

Affirmed.

SCOTT, P.J., and HEIPLE, J., concur.