SAMUEL THOMAS ADCOCK, Ex'r of the Estate of Hubert Adcock Jr., Deceased, Plaintiff-Appellee, v. BRAKEGATE, LTD., *et al.*, Defendants (Owens-Corning Fiberglas Corporation, Defendant-Appellant).

Fourth District   No. 4—92—0856

Argued May 11, 1993.—Opinion filed July 30, 1993.

John Dames, of Kelly, Drye & Warren, of Chicago (Carolyn Quinn (argued) and Stephen A. Wood, of counsel), for appellant.

James R. Wylder (argued), of James Walker, Ltd., of Bloomington, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

Plaintiff, Samuel Thomas Adcock, as executor of the estate of Hubert Adcock, Jr. (Hubert), brought a wrongful death action against, among other companies, Owens-Corning Fiberglas Corporation (hereinafter OCF). The action sought damages allegedly arising from the decedent's exposure to asbestos in his work environment. In two counts of plaintiff's third-amended complaint, he sought recovery under a theory of civil conspiracy. OCF's motion to dismiss these claims was denied.

At trial, the judge entered a default judgment against OCF on the issue of liability for its failure to produce corporate witnesses pursuant to Supreme Court Rule 237. (134 Ill. 2d R. 237.) After a trial on damages only, a jury returned a verdict against OCF. On appeal, OCF contends the trial judge erred by denying its motion to dismiss Adcock's claim for failure to state a cause of action because civil conspiracy is not actionable absent underlying intentional, tortious conduct. It also contends the trial judge abused his discretion by entering the default judgment. We affirm.

## I. FACTS

On April 15, 1970, OCF purchased the asbestos plant located at 1111 West Perry Street, Bloomington, Illinois. The deceased had been employed at the plant by Unarco Industries, Inc., from 1954 to 1970. According to Adcock, when OCF purchased the facility in April 1970, the deceased continued to work until the end of 1970 in Unarco's sink department within the plant. Unarco sold the asbestos operations to OCF, but retained ownership of the sink department.

Within the first two weeks after OCF bought the Bloomington plant, Dr. Jon Konzen, OCF's medical director, reviewed the potential health hazards which existed within the plant with the plant manager. Konzen arranged for an industrial hygiene survey of the manufacturing operations conducted by OCF within the building.

By July 14, 1970, Konzen had received preliminary results of the survey. In an internal OCF memorandum, Konzen stated:

"This study demonstrates immediate need for in-plant environmental control of asbestos so our employees do not continue to be severely exposed to airborne asbestos fiber.

Such ventilation as is currently operating at the plant is totally inadequate. It is suggested, to limit both the occupational health hazards and the legal liability, steps be undertaken ***."

In fall of 1970, Konzen continued his review of the health hazards within the Bloomington plant. He issued requirements for a new medical program for OCF employees within the plant.

In April 1971, Konzen met with W.W. Boeschenstein, president of OCF and son of former president, Harold Boeschenstein, to discuss the "Bloomington asbestos exposure." In a memorandum dated April 16, 1971, Konzen reviewed OCF's actions resulting from the hygiene survey. Four employees were already laid off because the company knew they had asbestosis. A listing of additional employees who had changes appearing on their chest X rays, according to Konzen, would be sent only to Dr. McNeely and the personnel manager, Mr. Janecek.

Konzen also suggested to OCF superiors that labeling should be done on asbestos products. In response, he received a memorandum dated September 21, 1970, from OCF employee J.P. Kern, which stated:

"Reference is made to your memo of September 15 regarding the warning label that should appear on Kaylo.

Are you saying that *we have* to do this now? I naturally would like to delay this requirement as long as possible." (Emphasis in original.)

Konzen knew, as early as April 1968, OCF's policy regarding release of information on asbestos hazards. He received a copy of an intracompany correspondence in which the OCF author questioned whether it would be wise from a "liability protection point of view" to indicate there might be hazards. The author stated, "[o]ur approach has been to indicate that 'all medical research to date indicates no hazards to health.'"

In 1972, the plant manager at Granville, Ohio, requested information to transmit to Japan on asbestos. The OCF response was to tell the manager:

"You are probing into a very sensitive area when you request information for transmittal to Japan on asbestos ***.

I'm not sure how much information OCF wants to release on the subject ***. In any event, it should come from our Corporate Medical and/or Law Departments. I am, therefore, forwarding your letter to Dr. Konzen and Tom Schuman for reply."

Hubert died in July 1987 from a self-inflicted gunshot wound to the chest. He had previously been diagnosed in 1984 with pulmonary

asbestosis. Because he had difficulty urinating, Hubert had visited his physician, Dr. Robert Conklin, in January 1987. Hubert had been overweight, weighing between 220 and 230 pounds. However, in February and early March 1987, he suddenly gained weight. By March 13, he weighed 248½ pounds. Conklin testified he suspected in March 1987 that Adcock had "mesothelioma," a cancer caused by exposure to asbestos. Hubert's autopsy report indicated the deceased's entire gastrointestinal space was consumed by mesothelioma. In the six-month span between Hubert's initial visit to Conklin and the autopsy, Hubert's weight had dropped from 248 pounds to 130 pounds.

In December 1987, Adcock filed his complaint against OCF. He sought recovery under two counts, one grounded in the Survival Act (see Ill. Rev. Stat. 1991, ch. 110½, par. 27—6) and a second in the Wrongful Death Act (see Ill. Rev. Stat. 1991, ch. 70, pars. 0.01 through 2.2). Both counts asserted that OCF, with other companies not involved in this appeal, agreed to suppress information about the harmful effects of asbestos and affirmatively misstated the safety of working with asbestos. Adcock alleged specific acts were committed in furtherance of the conspiracy and the agreement and these acts were the proximate cause of decedent's death. OCF's motion to dismiss the initial complaint was granted. The trial judge concluded although civil conspiracy is a recognized tort cause of action, Adcock's pleadings were deficient, noting four factual deficiencies in Adcock's initial complaint.

In February 1989, Adcock filed his third amendment to his complaint against OCF. The amendment again stated two counts sounding in the wrongful death and survival acts and was again based on a civil conspiracy theory. It corrected the four factual deficiencies noted by the trial judge in his order dismissing the complaint.

Count XXI of Adcock's amended pleadings included the following allegations:

"12. Hubert Adcock, Jr., contracted asbestosis and mesothelioma as a result of his exposure to asbestos.
* * *
15. Before Decedent worked at the Bloomington Plant, each of the Defendants *** knew that exposure to asbestos caused serious disease and death.
* * *
23. Defendants *** knowingly conspired and agreed among themselves to, among others [sic]:
a) positively assert in a manner not warranted by the information possessed by the conspirators, that which was and

is not true, to wit, that it was safe for people to work with and in close proximity to asbestos and asbestos containing materials;

  b) suppress information about the harmful effects of asbestos, including medical and scientific data, causing asbestos workers to be and to remain ignorant of that information;

24. One or more of the Defendants *** performed the following acts in furtherance of the conspiracy:

  a) sold asbestos without warning of the hazards known to them;

  b) refused to warn their own employees about the hazards known to them;
    ***

  d) agreed in writing not to disclose the results of research on the effects of asbestos upon health unless the results suited their interests;
              * * *

  i) Johns-Manville and one or more of the Defendants sold asbestos to the plant at 1111 West Perry Street to which Decedent was exposed without warning of the hazards known to Johns-Manville and one or more of the Defendants.

  j) Unarco employed Decedent at the plant *** without warning Decedent about the hazards of exposure to asbestos known to Unarco.

25. The agreement *** and the acts done in furtherance of the agreement *** were proximate causes of the death of decedent.''

Count XXII contained similar allegations.

OCF sought dismissal of Adcock's amended pleadings. OCF contended Adcock's counts XXI and XXII of his pleadings failed to state a cognizable cause of action under Illinois law because the pleadings failed to assert the acts allegedly committed in furtherance of the conspiracy were a proximate cause of the injuries. This motion was denied in April 1991. The trial judge concluded counts XXI and XXII alleged a conspiracy which resulted in injury to the decedent and a conspiracy cause of action, as an actionable tort was sufficiently stated in these counts. The judge's order relied on *People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 430 N.E.2d 1005.

Before trial, Adcock sought, pursuant to Supreme Court Rule 237(b) (134 Ill. 2d R. 237(b)), the production of four OCF employees: three weeks before trial he sought production of Jerry Hesler, ad-

vanced technologist for OCF, and Louis Saxby, a former OCF employee; on June 24, 1992, 12 days before trial, he sought production of Dr. Konzen and W.W. Boeschenstein. Because the trial judge's entry of a default judgment against OCF was based on its willful refusal to produce the latter two persons, the facts are limited to those which are relevant to the absence of these witnesses.

OCF filed an emergency motion to quash the request to produce. With regard to Konzen and Boeschenstein, OCF argued Rule 237(b) could be applied only subject to the restraints of the State and Federal constitutions. The witnesses' due process protections would be violated if they were compelled to testify because they were residents of Ohio and had no contact with Illinois. In the alternative, OCF argued Adcock had not shown good cause as to why these witnesses were necessary and had not indicated how these witnesses' testimony would evidence a conspiracy. OCF also contended Adcock had ample opportunity to depose these witnesses to learn what their testimony would be.

Adcock initially requested the witnesses be produced outside the presence of a jury so a reasonable basis for calling them could be conducted in the preferred method, question and answer sessions with the witnesses. Adcock's counsel then provided oral argument, supported by documentation, showing the relationship of Konzen and Boeschenstein to the issues in dispute. When ordered to produce Konzen and Boeschenstein, OCF refused to do so.

Adcock requested OCF be sanctioned for refusing to compel the appearance of these witnesses. Adcock argued OCF's pleadings be stricken and a default judgment entered on the issue of liability. OCF responded that no sanction was warranted because its reluctance to compel the appearance of its employees at trial was not a willful attempt to conceal evidence. OCF noted Adcock previously had the opportunity to cure any potential prejudice caused by the witnesses' absence by deposing them.

Although the trial judge was reluctant to grant the default judgment, he concluded the witnesses' testimony was relevant and they should have been produced. The judge then noted OCF had the burden to show the witnesses' testimony was not relevant and it had not done so. Adcock's motion for a default judgment against OCF on the issue of liability was granted. The jury questions were limited to damages.

At the close of the evidence regarding damages, OCF renewed its earlier motion for judgment on the pleadings and for the trial judge to reconsider his ruling striking OCF's answer. OCF also moved for a

ruling there was insufficient evidence of pecuniary loss under plaintiff's Survival Act count. The jury returned a $213,811.79 verdict in Adcock's favor. The trial judge denied OCF's various motions and entered judgment on the verdict. This appeal followed.

## II. Sufficiency Of The Pleadings To State A Cause Of Action

OCF argues the trial judge erred by denying its motion to dismiss (Ill. Rev. Stat. 1991, ch. 110, par. 2—615) Adcock's third amendment to his complaint. According to OCF, the complaint failed to state a cognizable cause of action because civil conspiracy alone cannot be a basis for liability; rather, liability must be based on intentional tortious conduct which brought about the injury. In the alternative, OCF contends even if this court concludes civil conspiracy alone is a basis for a cause of action, Adcock failed to properly plead his claim. OCF further argues he has not properly pleaded the elements of a cause in theories of fraudulent misrepresentation or fraudulent concealment, nor does he advance a products liability claim against it, so dismissal of the action is mandated.

Adcock contends no error occurred because civil conspiracy has been recognized as an independent cause of action for 100 years and his complaint properly pleaded such a claim.

### A. *Civil Conspiracy: to be Actionable at Law, it need not be Premised on an Underlying Act Which Itself Constitutes Wrongful or Tortious Conduct*

In ruling on a motion to dismiss a complaint for failure to state a cause of action, the trial judge presumes the alleged facts are true and must assume the truth of all reasonable inferences from those facts. (*Kennedy v. First National Bank* (1990), 194 Ill. App. 3d 1004, 1009, 551 N.E.2d 1002, 1005; *Loftus v. Mingo* (1987), 158 Ill. App. 3d 733, 737, 511 N.E.2d 203, 205.) On appeal, a reviewing court must determine whether the allegations of the complaint, viewed in the light most favorable to plaintiff, are sufficient to set forth a cause of action on which relief may be granted. (*Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 505, 565 N.E.2d 654, 657.) In this context, the challenge to the sufficiency of the complaint raises a question of law; and the trial court's ruling may be sustained on any ground justified by the record irrespective of whether we agree with its reasoning (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457 N.E.2d 9, 12).

■ A conspiracy is "an agreement or combination of two or more people to do an unlawful act or do a lawful act by unlawful means." (*Kennedy*, 194 Ill. App. 3d at 1010, 551 N.E.2d at 1006.) The trial judge relied on *Fahner* (88 Ill. 2d 300, 430 N.E.2d 1005) for his conclusion civil conspiracy is actionable under Illinois common law. However, *Fahner* does not represent that conclusion because it involved a statutory enforcement action brought by the Illinois Attorney General pursuant to the Illinois Antitrust Act (Ill. Rev. Stat. 1975, ch. 38, par. 60—7(4)). (*Fahner*, 88 Ill. 2d at 305-06, 430 N.E.2d at 1007-08.) Similarly, Adcock's reliance on *People ex rel. Scott v. College Hills Corp.* (1982), 91 Ill. 2d 138, 143, 435 N.E.2d 463, 465, is not persuasive because that case also involved a statutory enforcement action filed pursuant to the Illinois Antitrust Act.

Adcock directs this court to a previous ruling of this district in *Alm v. General Telephone Co.* (1975), 27 Ill. App. 3d 876, 327 N.E.2d 523. There, the plaintiff sued his former employer alleging the employer had convinced other local companies not to hire plaintiff because he allegedly had sexually assaulted a minor. Adcock directs us to the statement in *Alm* (27 Ill. App. 3d at 880, 327 N.E.2d at 526), "[a] conspiracy is an agreement between two or more persons to do an unlawful act or to do a lawful act by unlawful means." Although definitive of the term "conspiracy," this observation does not answer the question raised.

This district, the Illinois Supreme Court, and numerous other jurisdictions have observed that in a civil conspiracy action, the wrongful act alleged to have been done in pursuance of the conspiracy, or the damage sustained from the act—and not the conspiracy itself—is the gist of the action. *Seefeldt v. Millikin National Bank* (1987), 154 Ill. App. 3d 715, 719, 506 N.E.2d 1052, 1055 (act is the basis of the claim); *Montgomery Ward & Co. v. United Retail, Wholesale & Department Store Employees of America, C.I.O.* (1948), 400 Ill. 38, 52, 79 N.E.2d 46, 53 (damage is the gist of the claim); *Langer v. Becker* (1988), 176 Ill. App. 3d 745, 754-55, 531 N.E.2d 830, 836 (act is basis for claim); *Coffey v. MacKay* (1972), 2 Ill. App. 3d 802, 807, 277 N.E.2d 748, 751 (acts done and damages caused are the basis for the claim); *Maimon v. Sisters of the Third Order of St. Francis* (1986), 142 Ill. App. 3d 306, 311, 491 N.E.2d 779, 784 (act done is the basis for the claim).

However, the mere fact a civil conspiracy claim must be based on a particular unlawful act or a lawful act performed in an unlawful manner does not call for a conclusion the act must represent independent, tortious conduct. OCF directs this court to the principle stated

in *Ammons v. Jet Credit Sales, Inc.* (1962), 34 Ill. App. 2d 456, 465, 181 N.E.2d 601, 605, that a charge of conspiracy is merely an aggravation of the alleged wrongful act. The *Ammons* court also observed the wrongful acts alleged to have been perpetrated by defendants are the gist of an action based on a civil conspiracy theory. (*Ammons*, 34 Ill. App. 2d at 465, 181 N.E.2d at 605.) This ruling also does not answer the question raised.

Contrary to OCF's contention, a claim of civil conspiracy must be based on an independent actionable tort, this court agrees with the third district ruling in *Vance v. Chandler* (1992), 231 Ill. App. 3d 747, 750, 597 N.E.2d 233, 236, which rejected that reasoning. *Vance* relied on a previous third district ruling in *Illinois Traffic Court Driver Improvement Educational Foundation v. Peoria Journal Star, Inc.* (1986), 144 Ill. App. 3d 555, 494 N.E.2d 939, in which the court observed that in a civil action based on a conspiracy, no cause of action can exist in the absence of an overt, tortious, *or* unlawful act committed in furtherance of the conspiracy. (*Vance*, 231 Ill. App. 3d at 750, 597 N.E.2d at 236.) The *Vance* court concluded this observation supported its holding the alleged overt or unlawful act need not be tortious or otherwise actionable in tort to permit a civil conspiracy cause of action to proceed. *Vance*, 231 Ill. App. 3d at 750-51, 597 N.E.2d at 236.

■ The requisite elements for a civil conspiracy claim are: (1) an agreement between two or more persons (2) to participate in an unlawful act or a lawful act in an unlawful manner; (3) an injury caused by defendants; and (4) the overt act was done in furtherance of the common scheme. (*Wolf v. Liberis* (1987), 153 Ill. App. 3d 488, 496, 505 N.E.2d 1202, 1208.) OCF argues, as the defendants in *Vance* did, that the unlawful act must be independent tortious conduct. However, as noted in *Vance* (231 Ill. App. 3d at 750, 597 N.E.2d at 236) no cause of action for a civil conspiracy can lie in the absence of an overt, tortious, *or* unlawful act committed in furtherance of the conspiracy. The conjunctive "or" indicates alternatives for concluding a conspiracy existed and not cumulative requirements for finding a conspiracy existed.

■ A civil conspiracy, if properly pleaded, is actionable. The existence of a conspiracy can be inferred if defendants pursue the same objective by common means with one party performing one part and another performing another part. (*Forkin v. Cole* (1989), 192 Ill. App. 3d 409, 427, 548 N.E.2d 795, 807.) Adcock properly alleged a claim of civil conspiracy against OCF.

## B. *Fraudulent Misrepresentation or Fraudulent Concealment*

OCF argues even if a claim based on civil conspiracy is actionable, Adcock failed to properly plead any cause of action. In this case Adcock's pleadings alleged defendant Unarco Industries, Inc., employed the deceased without warning him of the risks associated with exposure to asbestos and defendant Johns Manville, Incorporated, sold asbestos without warning of the dangers associated with asbestos. These actions represent wrongful acts in furtherance of the conspiracy in which OCF allegedly participated. OCF finally contends that while Adcock's complaint appears grounded in fraudulent misrepresentation or concealment, the allegations are insufficient.

### 1. Waiver

█ Adcock concedes a party which has a default judgment entered against it can still appeal based on the alleged insufficiency of the pleadings. (*Dillman v. Dillman* (1951), 409 Ill. 494, 499, 100 N.E.2d 567, 570.) He nevertheless argues OCF should not be permitted to challenge the sufficiency of the pleadings because the trial judge entered the default judgment against it for its willful failure to obey a court order.

We reject this contention. (*In re Tally* (1991), 215 Ill. App. 3d 385, 390-91, 574 N.E.2d 1262, 1265.) At the trial level, OCF argued the pleadings were insufficient. After Adcock amended his pleadings, the trial judge rejected OCF's further objections. OCF has not waived review of this issue. Moreover, a plaintiff's failure to plead a legally cognizable cause of action is a grave error and can be raised for the first time on appeal. See *Swager v. Couri* (1979), 77 Ill. 2d 173, 185, 395 N.E.2d 921, 925; *Krachock v. Department of Revenue* (1949), 403 Ill. 148, 153, 85 N.E.2d 682, 685.

### 2. Merits

OCF contends Adcock's pleadings do not sufficiently set out the allegedly wrongful acts upon which the conspiracy allegation must rely, so the complaint should not have been permitted to stand. It directs us to *Board of Education v. A, C & S, Inc.* (1989), 131 Ill. 2d 428, 546 N.E.2d 580, arguing Adcock failed to properly allege a claim for fraudulent misrepresentation. We conclude, as an alternative to finding Adcock's pleading sufficiently set out underlying wrongful conduct to support a civil conspiracy claim, the pleadings also could be viewed as sufficiently outlining a claim based on fraudulent misrep-

resentation as the underlying tortious conduct of the civil conspiracy claim.

The elements of fraudulent misrepresentation are (1) a false statement of a material fact; (2) knowledge or belief by the party making the statement that it is false; (3) intention to induce the other party to act; (4) the other party acts in reliance on the truth of the statements; and (5) the other party incurs damage as a result of its reliance on the statements. *Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 286, 402 N.E.2d 599, 601; *Board of Education*, 131 Ill. 2d at 452, 546 N.E.2d at 591.

Adcock alleged the various defendants (1) positively asserted it was safe for people to work with, and in close proximity to, asbestos; (2) suppressed information about the harmful effects of asbestos; and (3) caused the workers to remain ignorant of the harmful effects of asbestos. Adcock also alleged the various defendants' acts were the proximate cause of decedent's death.

OCF correctly notes when fraudulent misrepresentation is alleged, the pleadings must contain specific allegations of fact from which fraud is the necessary or probable inference. (*Board of Education*, 131 Ill. 2d at 457, 546 N.E.2d at 593.) However, contrary to OCF's contention, Adcock's allegations sufficiently informed it of the allegations against which it had to defend.

In *Board of Education* (131 Ill. 2d at 436, 546 N.E.2d at 583-84), the plaintiffs, 34 school districts, sought recovery from manufacturers of asbestos-containing materials for the costs of removing the materials from their school buildings. Some plaintiffs alleged defendants fraudulently misrepresented the dangerous nature of their products.

The Illinois Supreme Court concluded plaintiffs did not allege sufficient facts to support the fraud claims. The complaint failed to indicate who was involved in the fraud, what specific representations were made, to whom they were made, and how these representations induced plaintiffs to act. In addition, the allegations were also weak respecting the timing of the alleged events. *Board of Education*, 131 Ill. 2d at 457-58, 546 N.E.2d at 594.

OCF claims Adcock's pleadings suffer the same deficiencies, so the cause of action should have been dismissed. OCF specifically alleges Adcock's pleadings do not (1) identify what representations were made by whom, or (2) state when the misrepresentations were made by each defendant.

Contrary to OCF's view, it was sufficiently informed Adcock alleged a conspiracy on the part of the various defendants to misrepresent the fact that working with asbestos was unsafe by (1) failing to

inform the *workers* of the known dangers and (2) affirmatively representing such work posed no health risks. The allegations sufficiently informed OCF this claim was being raised.

OCF next argues Adcock did not sufficiently outline when the actions for which it was allegedly liable occurred. We disagree. OCF was on sufficient notice. The activities for which it could have been liable were limited to the time period before the deceased stopped working at the Bloomington plant. Adcock's pleadings alleged (1) before decedent worked at the Bloomington plant, "[d]efendants *** knew that exposure to asbestos caused serious disease and death"; (2) defendants knowingly conspired to assert it was safe for people to work with, and in close proximity to, asbestos; (3) defendants suppressed information about the harmful effects of asbestos; (4) one or more of the defendants refused to warn their employees about the hazards of asbestos; and (5) agreed in writing not to disclose the results of research regarding effects of exposure to asbestos unless the results suited their interests.

*Board of Education* (131 Ill. 2d at 459, 546 N.E.2d at 594) is distinguishable because the court there noted plaintiffs had raised a conspiracy separate from the fraud count. In addition, plaintiffs had not challenged the propriety of dismissing that count on appeal. The court noted to properly plead a claim for fraudulent misrepresentation, a plaintiff must at least plead with sufficient particularity facts establishing the elements of fraud, including "what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made." (*Board of Education*, 131 Ill. 2d at 457, 546 N.E.2d at 594.) The pleading was insufficient because it attributed the alleged unlawful acts to numberless and nameless agents, servants and employees of unspecified defendants. (*Board of Education*, 131 Ill. 2d at 458, 546 N.E.2d at 594.) In this case, the unlawful acts allegedly committed by defendants and included in Adcock's pleadings adequately stated a cause of action for fraudulent misrepresentation.

*Fahner* (88 Ill. 2d at 310, 430 N.E.2d at 1009) provides guidance on evaluating the sufficiency of pleadings when the cause of action is based on a conspiracy claim, albeit in a case alleging conspiracy to fix prices in violation of the State anti-trust statute. The Illinois Supreme Court recognized the difficulty in requiring too much specificity in pleading such a claim. It stated, "evidence need not be laid out in the complaint, only the ultimate fact that the defendants agreed." (*Fahner*, 88 Ill. 2d at 310, 430 N.E.2d at 1009.) The *Fahner* court concluded the trial, not the pleadings, was

the proper place to introduce evidence of how and why the illegal agreement was made.

The Illinois Supreme Court has also indicated "[t]he exact role of a particular defendant cannot always be spelled out in the complaint," and often circumstantial evidence developed at trial is the only mechanism for establishing the conspiracy. (*Scott*, 91 Ill. 2d at 146, 435 N.E.2d at 467.) The *Scott* court noted, "[c]onspiracies by their very nature do not permit plaintiffs to allege all the details of the defendants' conduct. Such actions are often purposefully shrouded in mystery." *Scott*, 91 Ill. 2d at 145-46, 435 N.E.2d at 467; see also *Young v. Hansen* (1969), 118 Ill. App. 2d 1, 7, 249 N.E.2d 300, 303.

The complaint sufficiently informed OCF of the acts amounting to fraudulent misrepresentation which it allegedly committed in pursuance of the conspiracy.

## C. *No Products Liability Allegations*

OCF also contends Adcock's pleadings did not state a products liability cause of action against it because there was no allegation that deceased was exposed to products it was involved in manufacturing. (See *Kozak v. Armstrong World Industries, Inc.* (1991), 213 Ill. App. 3d 1061, 1065-66, 572 N.E.2d 279, 281-82.) We agree Adcock did not raise such a claim.

## D. *Conclusion*

A civil conspiracy claim need not be based on an independent claim of tortious conduct. Adcock's pleadings properly alleged *wrongful* conduct by OCF and a conspiracy between OCF and additional defendants to fraudulently misrepresent known facts related to health risks associated with working with asbestos. The trial judge properly denied OCF's motion to dismiss the counts based on civil conspiracy.

## III. Propriety Of Default Judgment

■ OCF finally contends the trial judge abused his discretion by entering the default order against it on the issue of liability and leaving damages as the only issue remaining for the jury. OCF advances two arguments on this point: (1) Adcock did not establish the requested witnesses possessed firsthand knowledge about whether a conspiracy existed; and (2) imposing a default judgment exceeded the proper sanction for its failure to produce the witnesses.

## A. *Did Plaintiff Demonstrate the Witnesses Sought Could Provide Relevant Testimony?*

Application of Rule 237(b) is under the control of the trial court, and the rule is appropriately employed where there was sufficient evidence to establish its use was intended to elicit probative testimony, rather than for harassment. (*Johnson v. Owens-Corning Fiberglas Corp.* (1992), 233 Ill. App. 3d 425, 434, 599 N.E.2d 129, 135.) We agree with the trial judge's conclusion the presence of these witnesses was essential to Adcock's ability to prove his claim.

Adcock contends the documents he produced, and his counsel's offer of proof on what Konzen's and Boeschenstein's testimony would be, showed these witnesses were essential to permit him to establish a conspiracy in which OCF participated.

Adcock's offer of proof and documents submitted as evidence indicated Konzen was present at the Bloomington plant during the period while Unarco employed the deceased. Konzen reviewed the asbestos operation immediately after OCF purchased the plant. The results he received from the survey indicated an "immediate need" for environmental control of asbestos within the plant and a "severe exposure to asbestos fiber" within the plant.

Konzen's knowledge of what the Unarco employees (such as the deceased) and OCF employees were told regarding the health risks their employment posed was relevant to the conspiracy allegation. Konzen was OCF's medical director. His knowledge of whether any protections were implemented within the plant was also relevant to Adcock's allegations.

Adcock directs us to a memorandum Konzen wrote in 1978 as evidence of contact between OCF and additional defendants. The memorandum was written after the Secretary of the Department of Health, Education, and Welfare publicly announced the risks associated with asbestos. Konzen's internal memorandum discussed how much information should be provided to past and current employees. It indicated he had contacted eight other asbestos suppliers to learn what action they had taken or planned to take.

OCF correctly notes the trial judge ruled, and Adcock's counsel conceded, that evidence of contact between asbestos suppliers was limited to contact which occurred before the deceased left his employment with Unarco in late 1970. A conspiracy would have had to have existed before this time to be actionable.

However, additional evidence supports the trial judge's conclusion Konzen was a relevant and necessary witness. There was evidence he

participated in the conspiracy of silence regarding the health hazards imposed on workers exposed to asbestos. On April 22, 1968, Konzen received an internal memorandum from John Vyverberg which asked Konzen's view about whether it would be "wise from a liability protection point of view to indicate that there might be 'potential hazards.' " It proceeded to indicate the company's approach to date had been to indicate that " 'all medical research to date indicates no hazard to health.' "

On March 25, 1970, shortly before OCF bought the Bloomington plant, Konzen responded to an inquiry of another OCF employee who was considering attending an asbestosis school. Konzen wrote to the employee it would be unwise for an OCF employee to attend the school because attendance might give "tacit approval" to the physician who was attempting to publicize the health effects of asbestos. Konzen's testimony would also have been relevant to describe any interaction OCF's medical department had with other asbestos suppliers' medical departments.

Adcock relies on a document which indicates Konzen knew the deceased had been exposed to asbestos during the period OCF operated the plant. Adcock filed a memorandum which Konzen had received which discussed the number of people who were exposed at the plant. The author noted, "there are probably another 109 people who were involved with the stainless steel sink operation which was in the same building and would have had general exposure to asbestos in the air." However, this document indicates it was received May 1, 1978, eight years *after* the deceased's employment at the plant ended. Hence, it could not have been viewed as evidencing what OCF knew in 1970.

Additional documents, however, support Adcock's contention. Konzen received a memorandum from OCF employee Kern in September 1970 indicating it was preferable the company not start using warning labels on products affected by asbestos. Kern noted he would like to delay such a procedure. This document, too, indicates company representatives were not forthright about information they possessed regarding the dangers of asbestos, and were callously indifferent to the health risk posed to employees. Konzen knew this was the attitude of management representatives within OCF.

Adcock also contends Boeschenstein's testimony was essential to its case. Boeschenstein was formerly chairman of the board, president, senior vice-president, salesman, and the son of the former president of OCF. He was in a unique position to testify about OCF's activities during his tenure with the company over four decades. Adcock

also contends he could have authenticated documents signed by the senior Boeschenstein.

Adcock directs us to an observation made about the senior Boeschenstein in a ruling by the Virginia Supreme Court which affirmed a punitive damages award against OCF. In *Owens-Corning Fiberglas Corp. v. Watson* (1992), 243 Va. 128, 146, 413 S.E.2d 630, 641, the court stated:

> "The evidence shows that since 1942, long before Watson handled Kaylo, Harold Boeschenstein, the president of Owens-Corning during the time period relevant to this case, knew the health hazards associated with the inhalation of asbestos fibers; that he embarked upon a strategy to use this information to benefit Owens-Corning during negotiations with its labor unions; and that, when necessary, he concealed this information to promote the sales of the Kaylo product."

Adcock also contends Boeschenstein would have testified concerning the interaction between OCF and Unarco when OCF assumed Unarco's asbestos operations at the plant. Adcock further maintains he was prevented from presenting the best evidence of what the testimony of these witnesses would have been because OCF refused to produce them.

Boeschenstein served in several executive capacities for OCF during his tenure. He would have known whether OCF and other asbestos companies communicated, either in writing or verbally, about asbestos and its harmful effects. His presence, and testimony, at trial, would likely have either supported Adcock's claim or defeated it.

OCF contends requiring the presence of these witnesses poses a "deleterious effect *** crippling [its business]." It relies on *Soto v. E.W. Bliss Division of Gulf & Western Manufacturing Co.* (1983), 116 Ill. App. 3d 880, 889, 452 N.E.2d 572, 579, for its contention the trial judge erred because Adcock did not establish a reasonable relationship between the information allegedly withheld and the pleadings. However, this court indicated in a previous ruling that "[n]either plaintiff nor the trial court was required to accept defendant's denials that Konzen and Boeschenstein knew anything." *Johnson*, 233 Ill. App. 3d at 435, 599 N.E.2d at 136.

OCF contends no evidence was presented which indicated it agreed with other asbestos companies to conceal information or to mislead the employees. It argues no evidence of meetings with representatives of other companies to discuss dangers of asbestos, no evidence of telephone calls, and no letters from OCF officials were presented to support Adcock's conspiracy claim. *Soto* provides no basis

for concluding the default judgment was error. As outlined by *Soto*, the documents filed by Adcock, combined with counsel's offer of proof regarding Adcock's reasons for seeking testimony by Konzen and Boeschenstein, indicated testimony by these witnesses was essential to Adcock's ability to present evidence of the alleged conspiracy.

Conspiracies by their nature do not permit plaintiffs to allege all the details of the defendants' conduct, and must often be proved from inferences drawn from circumstantial evidence. (*Scott*, 91 Ill. 2d at 145-46, 435 N.E.2d at 467; see *Young*, 118 Ill. App. 2d at 7, 249 N.E.2d at 303.) Adcock presented a sufficient basis for the trial judge's conclusion Konzen and Boeschenstein could provide pertinent information related to Adcock's cause of action.

### B. *Was Sanction Excessive?*

Imposing sanctions pursuant to Supreme Court Rule 219(c) (134 Ill. 2d R. 219(c)) is within the trial judge's discretion and such a ruling will not be disturbed absent an abuse of that discretion. *Johnson*, 233 Ill. App. 3d at 434, 599 N.E.2d at 135.

OCF directs us to the supreme court's ruling in *People ex rel. General Motors Corp. v. Bua* (1967), 37 Ill. 2d 180, 196-97, 226 N.E.2d 6, 16, for its contention the sanction imposed was excessive. Unlike *Bua*, Adcock was seeking the testimony of two employees of OCF. In *Bua* (37 Ill. 2d at 193-94, 226 N.E.2d at 14), plaintiff sought the production of voluminous records which would require substantial expense to produce. This production would be both financially expensive and would be labor-intensive.

OCF failed to show how requiring the presence of these witnesses would pose an enormous detriment to the company. We also reject its argument the trial judge erred by noting it had the burden to show the witnesses were not necessary. Although not a formal burden, OCF provided no reasonable basis for the trial judge to conclude the presence of Konzen and Boeschenstein was not necessary for Adcock to establish his claim, or that their presence would cause a deleterious effect on the operation of OCF.

Moreover, the trial judge did not make a hasty default ruling against OCF. The judge heard arguments and initiated questions to both parties. He then recessed for lunch and asked OCF to reconsider its refusal to produce Konzen and Boeschenstein. When court reconvened, the trial judge's first inquiry was whether OCF was adhering to its position of refusing to produce the witnesses. When OCF indicated it was, the trial judge stated:

"I'm really reluctant to do this because I think cases ought to be resolved [on their] merits, but I think that the rule is clear in that it requires the production of these witnesses, and I think there's been a showing their testimony is relevant."

This observation does not represent a ruling made absent serious, prior consideration. The trial judge did not abuse his discretion by entering the default judgment against OCF regarding liability. OCF consciously chose to disobey the trial judge's ruling, and suffered an appropriate consequence.

## IV. CONCLUSION

Adcock's pleadings were sufficient to permit his cause of action for civil conspiracy to proceed. The pleadings sufficiently outlined the wrongful conduct underlying the civil conspiracy claim. In the alternative, Adcock's allegations sufficiently outlined a claim for civil conspiracy based on fraudulent misrepresentation by OCF and additional defendants. Finally, the trial judge did not abuse his discretion in ordering OCF to produce two witnesses pertinent to the alleged conspiracy, or by imposing a default judgment against OCF for its refusal to produce the witnesses.

Affirmed.

COOK and LUND, JJ., concur.