Denise M. **KENNEDY**, Plaintiff–
Appellant,

v.

**SCHOENBERG, FISHER & NEWMAN,**
LTD., and Robert C. Goldberg,
Defendants–Appellees.

No. 97–2347.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 6, 1997.

Decided April 3, 1998.

718

Robert C. Goldberg ("Goldberg"), alleging wrongful termination under the Pregnancy Discrimination Act ("PDA") (Count I), discrimination under the PDA due to defendant SF & N's disability leave policy (Count II), defamation (Count III), and tortious interference with employment relationship (Count IV). The district court granted summary judgment in favor of defendants on Counts I and II, the federal pregnancy discrimination claims, and declined to exercise supplemental jurisdiction over plaintiff's state law claims (Counts III and IV), dismissing them without prejudice. Plaintiff now appeals the district court's decision to grant summary judgment in favor of defendant SF & N on plaintiff's claim that she was terminated because of her pregnancy in violation of the PDA and the district court's refusal to exercise supplemental jurisdiction over the state law claims.[1] For the following reasons, we affirm.

## I.

In November 1988, plaintiff was hired by the National Office Machine Dealers Association ("NOMDA") as a Staff Attorney. Goldberg, a shareholder of SF & N and outside General Counsel to NOMDA, had recommended plaintiff for the position. Plaintiff began earning $25,000 as Staff Attorney at NOMDA, and by January 1991, her Staff Attorney salary had increased to $35,-000.

In January 1991, plaintiff informed Goldberg that she was considering leaving NOMDA because she wanted to broaden her legal experience and increase her income. Goldberg recommended to the six other shareholders of defendant SF & N that they hire plaintiff as an associate corporate attorney. During her interview, plaintiff was told that, if hired, she was expected to work for clients of defendant SF & N other than NOMDA. Thereafter plaintiff and defendant SF & N reached an "understanding" regarding her work allocation, plaintiff believing she

Dean A. Dickie, D'Ancona & Pflaum, Ruth I. Major, Patrick M. Ouimet (argued), Sarles & Ouimet, Chicago, IL, for Plaintiff–Appellant.

Susan Benton–Powers (argued), Diane I. Smason, Sonnenschein, Nath & Rosenthal, Robert M. Chemers, Edward B. Ruff, Scott L. Howie, Pretzel & Stouffer, Chicago, IL, for Defendants–Appellees.

Before CUMMINGS, MANION and EVANS, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiff Denise Kennedy, an attorney, was terminated from her employment at defendant Schoenberg, Fisher & Newman ("SF & N"), a small law firm in Chicago, Illinois. Plaintiff filed a complaint against defendants SF & N and its shareholder and partner

---

1. Plaintiff does not appeal the district court's decision to grant summary judgment on Counts I and II to defendant Goldberg individually, which concluded that Goldberg cannot be personally liable because he is not an "employer" within the meaning of the PDA. Furthermore, plaintiff does not challenge the district court's holding that defendant SF & N was entitled to summary judgment on Count II, and thus plaintiff's claim that defendant SF & N's disability leave policy discriminates against pregnant employees is not the subject of this appeal.

could delegate approximately thirty to forty percent of her NOMDA work to non-lawyer SF & N employees. Relying on these assurances, defendant SF & N hired plaintiff as an associate attorney. On March 1, 1991, she began work at a salary of $50,000.

In July 1991, defendant SF & N conducted a review of plaintiff's performance which indicated that plaintiff's "overall analytic ability and problem solving skills," her "writing ability," and her "overall contribution to the firm's legal work" needed improvement. Defendant SF & N also voiced concern that plaintiff was not delegating enough of her NOMDA work to other SF & N employees. An SF & N shareholder told plaintiff that she was not performing enough non-NOMDA billable work to justify her salary. In order to help plaintiff shift thirty to forty percent of her NOMDA work to other employees, defendant SF & N agreed to provide plaintiff with assistance from clerical personnel and/or paralegals.

In the beginning of July 1991, plaintiff voiced an interest in drafting an amicus curiae brief to be filed with the United States Supreme Court on behalf of NOMDA in a pending antitrust appeal involving the Eastman Kodak Company. Goldberg, as General Counsel for NOMDA, was responsible for the brief and permitted plaintiff to draft it. Plaintiff had at least two months to complete the brief. In that time, Goldberg set various deadlines for plaintiff to submit drafts, which plaintiff missed. Plaintiff ultimately submitted a draft to Goldberg ten days before the brief was due to which Goldberg responded that he would have liked more time to edit the brief and that he had inadequate time for revisions and additional research. Goldberg was dissatisfied with the final brief and expressed his disappointment to plaintiff. Additionally, plaintiff made mistakes which incurred significant added costs for defendant SF & N. Plaintiff did not have the brief typeset until two days before it was due, which resulted in additional costs for expedited printing. Plaintiff also submitted the brief to the Supreme Court with the wrong color cover, which resulted in rejection of the brief by the Supreme Court and a $1,600 cost for resubmission. The Supreme Court rejected the brief a second time because the brief was submitted again with the wrong color cover. Resubmission another time cost another $260.

In August or September of 1991, plaintiff received a request from a NOMDA member to complete a contract analysis. Plaintiff knew that time was of the essence. However, before she left for vacation, plaintiff informed Goldberg that she failed to perform the analysis in time. This inaction on plaintiff's part cost the NOMDA member a business opportunity, and Goldberg had to apologize for plaintiff's incompetence.

In November 1991, plaintiff told Goldberg that she was pregnant. Prior to that time, no SF & N attorney had ever taken a disability leave, and defendant SF & N did not have a paid leave policy in place. After researching the policies of other law firms, in February 1992, defendant SF & N adopted the following paid leave policy:

Attorneys—Less than three years seniority—use of unused vacation (assumed for this purpose to be two weeks) and sick days (assumed for this purpose to be six days) plus four weeks pay at 50 percent of current rate.

Attorneys—Three years or more seniority—use of unused vacation and sick days (same assumed entitlements) plus six weeks pay at 50 percent of current rate.

Plaintiff did not feel that defendant SF & N's paid leave policy was generous enough and would have preferred more in terms of paid leave. Pursuant to the policy, defendant SF & N began keeping track of plaintiff's absences to determine how many paid sick and vacation days she would get during her leave.

Plaintiff began her maternity leave in June 1992. From January 1992 until the time of her leave, plaintiff billed approximately 88% of her time to her NOMDA position. Prior to her leave, plaintiff trained Tamara Kling, a temporary attorney who was hired at the $36,000 Staff Attorney salary to perform only NOMDA Staff Attorney work while plaintiff was on leave.

Before her leave ended, plaintiff informed Goldberg that she wanted to return part-time as NOMDA Staff Attorney. She presented

two alternatives: three days a week in the office for NOMDA and available to work out of her home on a fourth day, or a full-day job share with Kling. The Personnel Chairman of NOMDA rejected these options due to the inconvenience and added expense they would cause. Thus Tamara Kling remained as NOMDA Staff Attorney. Plaintiff then asked to work three days per week, and defendant SF & N agreed to accommodate her part-time schedule, cautioning that she must "actively seek work from the Firm" and respond to clients in a timely manner.

During plaintiff's leave of absence, plaintiff requested to attend the NOMDA annual convention in Las Vegas. The parties dispute whether plaintiff was required to prepare the materials for the convention and whether they were prepared sufficiently. After the convention, plaintiff submitted an expense report listing expenses chargeable to NOMDA, including a car rental and a $25.75 dinner expense for July 17, 1992.

Because plaintiff had not received prior approval for the car rental and because she had not rented the car from the company NOMDA had selected, Goldberg questioned the car rental expense. In a memo to Goldberg, plaintiff responded that Goldberg did not notify her as to which rental company had been selected by NOMDA. Plaintiff then modified her expense report, deleting the car rental expense.

Goldberg continued to withhold approval of the expense report, questioning plaintiff's dinner charge of $25.75 on July 17 since plaintiff attended an awards banquet that evening which served dinner. In response to Goldberg's refusal to approve the report, plaintiff submitted an amended expense report which omitted the $25.75 charge and added two dinners of $10 each for July 15, 1992 and July 16, 1992 and a breakfast of $5.75 for July 16, 1992, resulting in a total charge of $25.75. During her deposition, plaintiff admitted that she fabricated the subsequent three meal charges which totaled $25.75 and that the original dinner charge was for a meal eaten by her parents who were at the convention to look after her baby.

Goldberg informed plaintiff that he was submitting the expense report to NOMDA without his approval. In response to NOMDA accounts payable clerk Kay Nedrud's inquiry as to why Goldberg had not approved the expense report, Goldberg sent Nedrud a letter indicating the adjustments necessary in order for the report to pass muster under NOMDA's standards. Goldberg sent copies of the letter to the Executive Director, Personnel Chairman and Accounting Manager of NOMDA. None of these recipients viewed the letter as accusing plaintiff of dishonesty, lacking moral integrity, defrauding NOMDA, or padding or falsifying her expenses.

Upset with Goldberg's letter, plaintiff wrote a memorandum to Goldberg, charging him with making "false" accusations against her in the letter. In response, Goldberg wrote a memorandum addressing plaintiff's claims. Plaintiff responded with another memorandum, and then she circulated one of her memos to all SF & N partners. Goldberg in turn forwarded his most recent memo to the same partners of SF & N. Plaintiff also discussed her conflict with Goldberg with individuals at SF & N who advised her to attempt to resolve her differences with him.

In addition to her conflict with Goldberg, plaintiff remained unproductive after her maternity leave. Furthermore, defendant SF & N was beginning to experience a "slowdown" in its corporate practice. At a meeting on November 2, 1992, the shareholders of defendant SF & N discussed the conflict between plaintiff and Goldberg and plaintiff's lack of productivity as the firm's income went down. Goldberg refrained from speaking substantively about plaintiff at this meeting and abstained from the shareholder vote regarding her termination. On November 2, 1992, the shareholders voted to terminate plaintiff's employment due to her disruptive conflict with Goldberg, her consistent lack of productivity, and the slowdown in work at the firm. The shareholders offered plaintiff two months severance pay in exchange for the execution of a release of claims document which plaintiff refused to sign.

Plaintiff filed her original complaint on July 27, 1993, and an amended complaint on

March 25, 1994. Count I asserts a claim against defendants for wrongful termination under the PDA, and Count II contends that defendant SF & N's disability leave policy discriminates against pregnant women. Count III asserts a claim against defendants for defamation. Count IV seeks recovery against defendants for tortious interference with employment relationship. Defendants filed motions for summary judgment. The district court granted summary judgment on the federal claims (Counts I and II) and refused to exercise jurisdiction over the state claims (Counts III and IV), dismissing them without prejudice. Plaintiff now appeals the district court's decision to grant summary judgment in favor of defendant SF & N on plaintiff's claim that she was terminated because of her pregnancy in violation of the PDA and the district court's refusal to exercise supplemental jurisdiction over the state law claims.

Finding plaintiff's claims without merit, we affirm the district court's order granting summary judgment in favor of defendants and dismissing the state claims without prejudice.

## II.

We review a district court order granting summary judgment *de novo*. *Geier v. Medtronic, Inc.*, 99 F.3d 238, 240 (7th Cir.1996). We affirm a grant of summary judgment when the record, viewed in a light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202. We apply the summary judgment standard with particular care in employment discrimination cases, which often turn on the issues of intent and credibility. *Geier*, 99 F.3d at 240.

■ Title VII of the Civil Rights Act makes it "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's * * * sex." 42 U.S.C. § 2000e–2(a). In 1978, Congress amended Title VII to prohibit discrimination on the basis of pregnancy. *Geier*, 99 F.3d at 241. The Pregnancy Discrimination Act "brought discrimination based on pregnancy within a woman's protections against sex discrimination." 42 U.S.C. § 2000e(k); see *Hunt–Golliday v. Metropolitan Water Reclamation Dist. of Greater Chicago*, 104 F.3d 1004, 1010 (7th Cir.1997). The PDA provides that "[w]omen affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes * * * as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k); see *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 735 (7th Cir.1994). An unlawful employment practice is established whenever pregnancy is a motivating factor for an adverse employment decision. 42 U.S.C. § 2000e–2(m); see *Hunt–Golliday*, 104 F.3d at 1010.

■ While the PDA does not impose an affirmative duty on employers to offer maternity leave or to take other measures to assist pregnant employees, it does require that the employer treat the employee as well as it would have if she were not pregnant. *Piraino v. International Orientation Resources, Inc.*, 84 F.3d 270, 274 (7th Cir.1996). The issue before this Court, therefore, is whether plaintiff Kennedy presented a question of fact as to whether she was treated differently because of her pregnancy.

■ Plaintiff may establish a case of sex discrimination in order to avoid summary judgment in one of two ways. First, plaintiff may present enough evidence to demonstrate that her discharge was a result of intentional discrimination. *Geier*, 99 F.3d at 241. Plaintiff may establish this discriminatory motivation through either "direct evidence, e.g., an acknowledgment on the part of the employer of discriminatory intent, or—as is more usually the case—by relying on circum-

stantial evidence, e.g., ambiguous statements or suspicious timing." *Id.* If a plaintiff demonstrates that an employment decision was motivated in part by her pregnancy, the defendant cannot avoid a finding of liability by proving that it would have made the same decision had the plaintiff not been pregnant, but can escape monetary damages in such a situation. *See* 42 U.S.C. § 2000e–5(g)(2)(B).

Alternatively, plaintiff may avoid summary judgment by using the *McDonnell Douglas* burden-shifting approach. Under that approach, plaintiff must establish a prima facie case of discrimination by demonstrating that (1) plaintiff was a member of a protected class; (2) plaintiff was performing to her employer's legitimate expectations; (3) despite her performance, plaintiff was discharged; and (4) others, similarly situated but not in the protected class, were treated more favorably. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, *93 S.Ct. 1817,* 1824, 36 L.Ed.2d 668. If plaintiff establishes a prima facie case, the burden shifts to the defendant who must produce a legitimate, non-discriminatory reason for plaintiff's treatment to avoid liability. *Geier,* 99 F.3d at 241–242. The plaintiff then has the opportunity to demonstrate that the proffered explanation is pretextual. *Id.* at 242; see also *Sheehan v. Daily Racing Form, Inc.,* 104 F.3d 940, 940 (7th Cir.1997), certiorari denied, —— U.S. ——, 117 S.Ct. 2480, 138 L.Ed.2d 989.

The plaintiff in this case tried both methods of avoiding summary judgment but was unsuccessful in each. She did not produce any direct or circumstantial evidence demonstrating that defendant SF & N terminated her because of her pregnancy and likewise failed to establish a pregnancy discrimination case under the *McDonnell Douglas* approach.

### A. Plaintiff Produced No Evidence of Intentional Discrimination—Either Direct or Circumstantial

■ A plaintiff can establish pregnancy discrimination by presenting either direct or circumstantial evidence of discriminatory intent. *Piraino,* 84 F.3d at 274. Plaintiff argues that certain comments and conduct by

Goldberg qualify as evidence of intentional discrimination. Specifically, plaintiff points to the following alleged remarks and conduct by Goldberg: (1) soon after Goldberg became aware that plaintiff was pregnant, he "repeatedly told [plaintiff] that 'if you were my wife, I would not want you working after having children'" and told other SF & N employees that plaintiff "should be home with her kids now, with her child now, that she shouldn't be working;" (2) less than four weeks after plaintiff announced her pregnancy, Goldberg wrote a memorandum dated November 26, 1991, criticizing plaintiff's work performance; (3) Goldberg responded "Yes" to plaintiff's inquiry as to whether he was building a "case" against plaintiff; and (4) while Goldberg and plaintiff were friendly before plaintiff announced her pregnancy, plaintiff claims that "[s]hortly after Goldberg learned of Ms. Kennedy's pregnancy, [Goldberg] became distant, cold, and acrimonious toward Ms. Kennedy." We agree with *the district court's conclusion that none of the above comments and conduct by* Goldberg constituted enough evidence to avoid summary judgment on plaintiff's claim that her discharge was a result of intentional discrimination.

■ Direct evidence is that which, "if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Hunt–Golliday,* 104 F.3d at 1010 (quoting *Randle v. LaSalle Telecommunications, Inc.,* 876 F.2d 563, 569 (7th Cir.1989)). Direct evidence of discriminatory intent in pregnancy discrimination cases generally is in the form of an admission by a supervisor or decision maker that the employee was suspended because she was pregnant. *Troupe,* 20 F.3d at 736. To rise to the level of direct evidence of discrimination, this Court has stated that "isolated comments must be contemporaneous with the discharge or causally related to the discharge decision making process." *Geier,* 99 F.3d at 242.

In *Geier,* this Court held that the comment "Have all the kids you would like—between spring, summer, and fall. I will not work your territory during the winter months" made by the plaintiff's supervisor in the con-

text of discussing plaintiff's familial plans during a long car trip was not direct evidence of discriminatory intent. *Id.* The Court found that the comment, made a year prior to plaintiff's discharge, was not temporally related to plaintiff's termination. *Id.* The Court also found that even though the comment was made by plaintiff's supervisor, there was no causal nexus between the comment and the decision to discharge because the remark was made in a casual conversation during a long car trip, a setting unrelated to discussions of the poor work performance which led to plaintiff's dismissal. *Id.*

■ Here none of the comments and conduct by Goldberg indicate that at the time defendant SF & N made its decision to terminate plaintiff, it was motivated by plaintiff's pregnancy in deciding to discharge her. Specifically, the comment attributed to Goldberg, "if you were my wife, I would not want you working after having children," does not demonstrate an acknowledgment of discriminatory intent in connection with defendant SF & N's decision to discharge plaintiff. The comment was made at least five months before plaintiff's termination and thus was not temporally related to her discharge. In addition, there was no causal nexus between the comment and plaintiff's discharge. The alleged remark, made while Goldberg and plaintiff were discussing the "joys of children," occurred in a casual setting unrelated to discussions regarding the issues which led to plaintiff's dismissal. Furthermore, the conclusion that there was no nexus between Goldberg's alleged comment and the decision to terminate plaintiff is reinforced by the fact that Goldberg, after having allegedly made the above remark, was instrumental in facilitating plaintiff's return to work by agreeing to create a new part-time associate position in order to accommodate her desire to work when no such position had existed previously. It defies common sense to believe that Goldberg would so willingly accommodate plaintiff's part-time request after her pregnancy if SF & N did not want her to return to work due to her pregnancy.

Plaintiff attempts to show a causal nexus between Goldberg's comment and the decision to terminate her by arguing that Goldberg provided false information to the shareholders that plaintiff falsified her NOM-DA expense reports and, in reliance, the shareholders terminated her. However, the evidence does not support this argument, and, even if it did, her claim based on the expense report would not support an allegation of pregnancy discrimination.

■ Finally, even if Goldberg's comment could be viewed as discriminatory, it does not serve as evidence plaintiff was terminated for discriminatory reasons because Goldberg, even though plaintiff's supervisor, was not a decision maker in the determination to terminate plaintiff. It is undisputed that Goldberg did not speak significantly about plaintiff at the meeting regarding her termination and also abstained from the vote to terminate her. As this Court has stated in *Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563, 569 (7th Cir.1989), direct evidence of discriminatory intent "must not only speak directly to the issue of discriminatory intent, it must also relate to the specific employment decision in question." See also *Hong v. Children's Memorial Hospital*, 993 F.2d 1257, 1266 (7th Cir.1993), certiorari denied, 511 U.S. 1005, 114 S.Ct. 1372, 128 L.Ed.2d 48 (holding that discriminatory remarks, "when unrelated to the decisional process, are insufficient to demonstrate that the employer relied on illegitimate criteria").

We agree with the district court that plaintiff Kennedy's "direct" evidence was not sufficient to raise a genuine issue of material fact about the existence of discriminatory intent. The comment attributed to Goldberg, viewed in the light most favorable to plaintiff, does not satisfy the temporal or causal criteria required by this Court and thus does not rise to the level of direct evidence of discrimination.

■ Plaintiff also had the opportunity to prove discriminatory intent using circumstantial evidence. In *Troupe*, 20 F.3d at 736, this Court recognized three types of circumstantial evidence of intentional discrimination: "(1) a mosaic of evidence which, taken together, would permit a jury to infer discriminatory intent; (2) comparative evidence showing that employees similarly situated to

the plaintiff other than in the protected characteristic received systematically better treatment; and (3) pretext evidence, where the plaintiff is qualified for and fails to receive the desired treatment, and the employer's stated reason for the difference is unworthy of belief." *Piraino*, 84 F.3d at 274.

Plaintiff's argument falls basically into the first of these three categories. The mosaic of evidence which permits an inference of discriminatory intent usually consists of evidence of "ambiguous statements, suspicious timing, discrimination against other employees and other pieces of evidence nonconclusive in itself but together composing a convincing mosaic of discrimination against the plaintiff." *Troupe*, 20 F.3d at 737. Plaintiff alleges that the timing of Goldberg's criticism of plaintiff's performance, SF & N's recording of plaintiff's absences, Goldberg's alleged response that he was building a case against plaintiff, and Goldberg and plaintiff's dispute regarding the expense report constitute sufficient circumstantial evidence to establish an inference of discriminatory intent.[2] We agree with the district court that such evidence does not lead to an inference of pregnancy discrimination.

■ Although plaintiff claims that Goldberg first criticized her work after he learned she was pregnant, she was aware of the substance of his criticisms prior to that time. Plaintiff's testimony establishes that she was aware of Goldberg's dissatisfaction with her handling of the *Kodak* brief before it was filed in September 1991. In addition, plaintiff was aware of other failures regarding her NOMDA work which occurred before she announced her pregnancy. Thus Goldberg's November 1991 memo criticizing plaintiff is not sufficient to establish an inference of pregnancy discrimination.

■ Plaintiff also claims that she was treated differently than other SF & N employees because defendant SF & N kept track of her absences after instituting its

disability leave pay policy. However, SF & N did so because plaintiff was the first and only associate attorney to take a disability leave after institution of the new policy and, as a result, it was unnecessary for the firm to record other attorneys' absences. Thus defendant SF & N's monitoring plaintiff's absences does not lead to an inference of pregnancy discrimination.

■ Additionally, Goldberg's alleged response that he was building a "case" against plaintiff is insufficient evidence from which to infer pregnancy discrimination. As the district court correctly noted, "there is nothing in the record which reflects that the alleged 'case' related to plaintiff's pregnancy, or that any such case relating to plaintiff's pregnancy was relied upon at the time that defendant SF & N made its decision to terminate plaintiff's employment."

■ Finally, plaintiff alleges that Goldberg's "letter writing campaign" against her indicates that she was discriminated against due to her pregnancy. However, Goldberg was not motivated by plaintiff's pregnancy in bringing the issue of plaintiff's expense reports to the attention of the shareholders of defendant SF & N. Concerned with incorrectly billing defendant SF & N's client, Goldberg was justified in expressing concern regarding plaintiff's expense report which was revised three times, especially in light of the fact that plaintiff eventually admitted that she fabricated the $25.75 meal charge. Goldberg's conduct provides no basis for inferring that plaintiff was terminated due to her pregnancy. Furthermore, plaintiff provides no evidence even establishing that she was terminated because of her falsification of the expense reports. The shareholders at defendant SF & N have maintained that plaintiff was discharged due to her conflict and acrimonious dispute with Goldberg, her lack of productivity, and the slowdown in the firm's corporate work. None of the evidence presented by plaintiff

---

**2.** While the district court referred to and analyzed the alleged conduct and comments by Goldberg as "direct" evidence, the evidence, with the exception of the alleged statement "[i]f you were my wife, I would not want you working after having children," is more appropriately classified as "circumstantial." However, regardless of the label assigned to the evidence, the district court properly evaluated and rejected the evidence as presenting a triable issue of pregnancy discrimination.

regarding Goldberg's alleged comments or conduct comprise a mosaic of circumstantial evidence linking plaintiff's termination with her pregnancy.

### B. Plaintiff Could Not Establish Pregnancy Discrimination Under the *McDonnell Douglas* Approach

As previously stated, in order to establish a prima facie case under the *McDonnell Douglas* framework, plaintiff must show that (1) she was a member of a protected class; (2) she was performing to her employer's legitimate expectations; (3) despite her performance, she was discharged; and (4) others, similarly situated but not in the protected class, were treated more favorably. See *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. If plaintiff establishes a prima facie case, the burden shifts to the defendant who must produce a legitimate, non-discriminatory reason for plaintiff's treatment to avoid liability. *Geier*, 99 F.3d at 241–242. The plaintiff then has the opportunity to demonstrate that the proffered explanation for the employment decision is pretextual. *Id.* at 242.

We agree with the district court that plaintiff did not establish a prima facie case of pregnancy discrimination under the *McDonnell Douglas* approach. While plaintiff satisfied the first and third elements and may even have satisfied the second element, she clearly did not present evidence proving the fourth element, that others, similarly situated but not in the protected class, were treated more favorably.

Plaintiff satisfied the first element because she was a member of a protected class of pregnant women and the third element because she was terminated after revealing her pregnancy.

It is a closer call as to whether plaintiff produced evidence to demonstrate that she was performing to her employer's legitimate expectations. Defendant SF & N claimed that plaintiff fell short of its expectations because she was involved in an acrimonious conflict with Goldberg and because she was unproductive at a time when the firm's corporate department was experiencing a slow-down. The district court found defendant's arguments without merit and found that plaintiff was performing to defendant's expectations because, as defendant SF & N conceded, plaintiff was not discharged "for her failure to acceptably perform substantive legal work." In reaching this conclusion, however, the district court ignored this Court's prior ruling that "an employee's 'performance' is not necessarily confined to an appraisal of his or her substantive work." *Oates v. Discovery Zone*, 116 F.3d 1161, 1171 (7th Cir.1997). Therefore, the fact that plaintiff engaged in a hostile dispute with one of the firm's partners after being counseled to put an end to it could lead to the conclusion that plaintiff was not performing to her employer's legitimate expectations. However, we agree with the district court's conclusion that the fact that plaintiff failed to be productive when the corporate department was experiencing a slowdown does not necessarily lead to the conclusion that she was not performing up to her employer's legitimate expectations. The evidence reveals that "[t]here was certainly some question as to whether Ms. Kennedy could be productive under those business conditions." In fact, because of the slowdown experienced by the firm's corporate department, defendant SF & N discharged another attorney in the corporate practice and did not hire a new corporate attorney until March 1994 when the firm's corporate work increased. Thus it is reasonable that plaintiff may have been less productive because she had less work to do due to the slowdown and may have been performing to her employer's legitimate expectations.

Even if plaintiff satisfied the second element of the *McDonnell Douglas* framework in that she was performing up to her employer's legitimate expectations, she clearly did not present any evidence proving the fourth element, that there were other similarly situated non-pregnant attorneys at defendant SF & N who were treated more favorably than plaintiff or who replaced plaintiff. The district court correctly noted that plaintiff did not establish that Tamara Kling was a similarly situated employee treated more favorably. Plaintiff was paid $50,000 to perform legal work for NOMDA and other clients of

SF & N. While defendant SF & N retained Kling when it discharged plaintiff, Kling's job was to perform NOMDA Staff Attorney functions; she did not work for any other clients at SF & N besides NOMDA; and she was paid $36,000, the salary for a NOMDA Staff Attorney. Thus plaintiff fails to show that Kling was a similarly situated non-pregnant attorney who was treated more favorably than plaintiff.

██ Plaintiff claims that defendant SF & N treated an individual not in her protected class more favorably when it hired a new male attorney with less legal experience after plaintiff was discharged. However, as the district court concluded, this claim is baseless. Defendant SF & N did in fact hire a new associate, but he was an associate for the litigation department, not the corporate practice. He was hired to replace a litigation associate with whom the firm was dissatisfied and thus discharged. Plaintiff was not considered for the position because she was not a litigator nor did she ask to be considered for a position in the litigation department. Thus the district court accurately found that the new litigation associate was not a similarly situated individual who was given more favorable treatment by defendant SF & N than plaintiff.

Finally, plaintiff fails to demonstrate that defendant SF & N hired a corporate associate to take the place of plaintiff or was looking to do so. In fact, following plaintiff's termination, defendant SF & N discharged Lance Lis, the other associate practicing in defendant SF & N's corporate department, due to the slowdown in the firm's corporate practice. Thus, as the district court concluded, "the record is silent regarding whether there were other similarly situated attorneys at defendant SF & N who were not member[s] of the protected class of pregnant women and who were being treated more favorably than plaintiff." Unable to demonstrate that other similarly situated non-pregnant attorneys at defendant SF & N were treated more favorably, plaintiff cannot establish a prima facie case under the *McDonnell Douglas* framework.

Since plaintiff has failed to establish a prima facie case of pregnancy discrimination, it is unnecessary to address whether defendant SF & N has articulated a legitimate non-discriminatory reason for its decision to terminate plaintiff and whether the evidence reveals that such reason is pretextual.

### III.

██ Having determined that summary judgment was appropriate on plaintiff's federal claims against defendants, the district court declined to exercise supplemental jurisdiction over plaintiff's state law claims of defamation and tortious interference with employment relationship. According to the supplemental jurisdiction statute, a district court "may decline to exercise supplemental jurisdiction" over pendent state law claims if the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); see *Wright v. Associated Insurance Cos., Inc.*, 29 F.3d 1244, 1250 (7th Cir.1994).

██ This Court has stated that "the general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Wright*, 29 F.3d at 1251; *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 727–728, 86 S.Ct. 1130, 1139–40, 16 L.Ed.2d 218. While there are "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness and comity—will point to federal decision of the state-law claims on the merits,"[3]

**3.** For example, a party may succeed in reversing a district court's decision declining to exercise jurisdiction over pendent state claims in situations where the statute of limitations has run on filing the pendent claims so that the claims cannot be filed timely in state court. See *Duckworth v. Franzen*, 780 F.2d 645, 656 (7th Cir.1985). Additionally, a party may demonstrate that a district court abused its discretion in declining to exercise pendent jurisdiction if an issue of federal law was raised as a dispositive defense to the remaining pendent claims, and the judge agreed that it was a valid defense but dismissed the suit without prejudice. See *Disher v. Information Resources, Inc.*, 873 F.2d 136, 141 (7th Cir.1989); *Graf v. Elgin, Joliet and Eastern Ry. Co.*, 790 F.2d 1341, 1347 (7th Cir.1986).

the district judge is given broad power in determining whether such circumstances apply and thus whether it is appropriate to retain jurisdiction over the state law claims. *Wright*, 29 F.3d at 1251. "Pendent jurisdiction is a power which the district court, in the exercise of its sound discretion, may choose to grant; it is not a plaintiff's right." *Landstrom v. Illinois Dept. of Children and Family Services*, 892 F.2d 670, 679 (7th Cir.1990); see *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139. We will reverse a district court's refusal to exercise this power only upon a showing of abuse of discretion. *Landstrom*, 892 F.2d at 679. "Decisions to relinquish pendent jurisdiction are occasionally reversed." *Disher v. Information Resources, Inc.*, 873 F.2d 136, 140–141 (7th Cir.1989) ("A decision to relinquish pendent jurisdiction before the federal claims have been tried is, as we have said, the norm, not the exception, and such a decision will be reversed only in extraordinary circumstances."). In fact, this Court has characterized the district court's discretion to relinquish pendent jurisdiction as "almost unreviewable," especially when all federal claims have been dropped from the case before trial and only state law claims remain. *Huffman v. Hains*, 865 F.2d 920, 923 (7th Cir.1989). "At that point, respect for the state's interest in applying its own law, along with the state court's greater expertise in applying state law, become paramount concerns." *Id.*

Here, the district court did not abuse its discretion in dismissing the state law claims after all federal claims had dropped from the case. The court found that "there is nothing in the record which indicates, and plaintiff does not argue, that judicial economy, convenience, fairness and comity point to federal decision of state law claims on the merits." While the parties claim the case should remain in federal court because the district judge was familiar with both the facts and the law of the case and the parties have undertaken discovery, these considerations are not adequate to make us "second-guess" the district court's decision to relinquish jurisdiction. See *Huffman*, 865 F.2d at 923. We hold, therefore, that the district court was well within its discretion in dismissing

plaintiff's state law claims, and the dismissal without prejudice is affirmed.

## IV.

Because plaintiff has failed to prove intentional discrimination by direct or circumstantial evidence and has not established a prima facie case of pregnancy discrimination under the *McDonnell Douglas* burden-shifting approach, summary judgment was appropriate on plaintiff's claim that she was terminated because of her pregnancy in violation of the PDA. Plaintiff has not shown that if all the relevant facts were as they are except for the fact of her pregnancy, she would not have been fired. Defendant SF & N terminated plaintiff due to the acrimonious conflict between plaintiff and Goldberg, the slowdown experienced by the firm in its corporate department, and plaintiff's own lack of profitability. Plaintiff has not shown that her termination related in any way to her pregnancy. Therefore, we affirm the district court's order granting summary judgment in favor of defendant SF & N and dismissing plaintiff's state law claims without prejudice.

AFFIRMED.