**ROTEC INDUSTRIES, INC., an Illinois corporation, Plaintiff,**

v.

**MITSUBISHI CORPORATION, a corporation organized under the laws of Japan; Mitsubishi International Corporation, a New York corporation; Tucker Associates, Inc., an Oregon corporation; and Garry Tucker, an individual, Defendants.**

No. 97–CV–2024.

United States District Court, C.D. Illinois, Danville/Urbana Division.

Dec. 14, 1998.

Order Denying Reconsideration January 12, 1999.

---

811

James Cottrell, Dobbins, Fraker, Tennant,
Joy & Perlstein, Champaign, IL, George P.
Andrews, John J. Held, Matthew G. McAn-

drews, Thomas J. Wimbiscus, McAndrews, Held & Malloy, Ltd., Chicago, IL, for Plaintiff Rotec Industries.

Walter M. Rogers, Michael O. Warnecke, Lisa A. Schneider, Mayer, Brown & Platt, Chicago, IL, John Bramfeld, Bramfeld & Wong, Champaign, IL, for Defendants Mitsubishi Corporation, Tucker Associates, Inc. and Garry Tucker.

David T. Audley, Chapman and Cutler, Chicago, IL, for Defendant Mitsubishi International.

## ORDER

McCUSKEY, District Judge.

On November 17, 1997, Plaintiff, Rotec Industries, Inc., filed a Second Amended Complaint (# 37) against Defendants, Mitsubishi Corporation (MC), Mitsubishi International Corporation (MIC), Potain, Tucker Associates, Inc. and Garry Tucker (collectively referred to as "Tucker"). On July 6, 1998, this court granted Potain's Motion to Dismiss based upon the lack of personal jurisdiction. Potain is no longer a party to this action.

There are currently three pending motions before this court. On January 31, 1998, MIC filed a Motion to Dismiss (# 45). On October 27, 1998, this court denied this motion, in part, finding there was no basis to dismiss MIC from the action based upon misjoinder under Rule 21. The remaining portion of MIC's Motion remains pending. Tucker also filed a Motion to Dismiss (# 47) on January 31, 1998. On May 5, 1998, MC filed its Motion to Dismiss (# 80). Both Tucker and MC raised as an issue, among other things, that count I of Plaintiff's Second Amended Complaint should be dismissed because Plaintiff could not show that Defendants committed an act of patent infringement in the United States. On October 27, 1998, this court advised Plaintiff that it may be appropriate to decide that issue by way of summary judgment. Following careful consideration of all of the documents and arguments presented by the parties:

(1) This court finds there is no genuine issue of material fact regarding whether an act of patent infringement was committed in the United States. Accordingly, all Defendants are entitled to summary judgment on this issue.

(2) By granting summary judgment to Defendants on Plaintiff's patent infringement claim (count I), and because Plaintiff has conceded that its copyright infringement claim (count II) should be dismissed, no count remains which supports federal jurisdiction. This court, in its discretion, declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. Accordingly, this case is terminated.

FACTS

Plaintiff, an Illinois company whose principal place of business is in Elmhurst, Illinois, is the assignee of record of a patent for tower crane supported articulated concrete conveyor belt systems which are sold under the trademark "Tower Belt." In 1996, Plaintiff sold several of these systems to the Chinese government to be used in the construction of the Three Gorges Dam on the Yangtze River in China. On December 16, 1996, MC, a corporation organized under the laws of Japan, signed a contract with the Chinese government to provide two tower crane concrete conveyor systems for use in the construction of the Three Gorges Dam.

In its Second Amended Complaint, Plaintiff alleged that MC, Potain, a French corporation, and C.S. Johnson Co., an Illinois corporation, formed a joint venture for the purposes of bidding upon the design and construction of the concrete delivery systems. C.S. Johnson filed for Chapter 11 bankruptcy in July 1997 and was not named as a Defendant in Plaintiff's Second Amended Complaint. Plaintiff alleged that Tucker, who resides in Tigard, Oregon, was hired by C.S. Johnson to perform design work related to the systems. Plaintiff alleged that Tucker served as an agent of C.S. Johnson and that MIC served as an agent of its parent corporation, MC. Plaintiff alleged that Tucker and MIC willfully participated in, induced and approved the wrongful acts alleged in the complaint. Plaintiff alleged that all of the Defendants were liable for damages for patent infringement (count I) and copyright infringement (count II).

Plaintiff alleged that this court has jurisdiction over the action based upon these federal claims.

Plaintiff also alleged that all of the Defendants were liable for damages for trade secret misappropriation, based upon violation of the Illinois Trade Secrets Act (count III), unlawful interference with prospective advantage (count IV) and civil conspiracy to commit all of the above (counts V to VIII). Plaintiff stated that all of these claims arise under the laws of Illinois and that this court has supplemental jurisdiction over the state law claims.

As noted, MIC, Tucker and MC have filed Motions to Dismiss. Tucker and MC argued that count I should be dismissed because Plaintiff failed to plead acts of patent infringement which occurred in the United States and because any infringing acts occurred outside of the United States. In support of this contention, both Tucker and MC filed Statements of Undisputed Facts and an Appendix of documents. Defendants also raised various reasons why the remaining counts should be dismissed.

On May 4, 1998, Plaintiff was allowed leave to conduct limited discovery from Tucker *solely* on the issue of whether an act of patent infringement was committed in the United States. On October 27, 1998, this court denied Plaintiff's request for additional time to complete discovery but allowed Plaintiff fourteen days to Respond to the Motions to Dismiss filed by Tucker and MC. This court advised Plaintiff that it may be appropriate to decide the issue of whether an act of patent infringement was committed in the United States by way of summary judgment.

On November 10, 1998, Plaintiff filed its Response to Tucker's Statement of Undisputed Facts and its Response to MC's Statement of Undisputed Facts. On November 13, 1998, Plaintiff was allowed leave to file its Consolidated Response to Defendants' Motions to Dismiss. In this Response, Plaintiff contended there are genuine issues of material facts regarding whether an "offer to sell" was made in the United States which precludes summary judgment on its patent infringement claim. However, Plaintiff stated that it did not object to the dismissal of its claim for copyright infringement. Plaintiff also argued that its claim for trade secret misappropriation was sufficient to withstand the Motions to Dismiss. However, in the alternative, it attached a proposed Third Amended Complaint which set out factual allegations in greater detail. This proposed Complaint includes only counts I through VI as it does not include a copyright infringement claim or a claim of civil conspiracy based upon copyright infringement.

On November 24, 1998, Tucker and MC filed their Reply to Plaintiff's Response. Defendants argued strenuously that they are entitled to summary judgment on Plaintiff's patent infringement claim. Defendants have conceded, however, that Plaintiff's proposed Third Amended Complaint "essentially cures the pleading deficiencies articulated by Defendants" regarding the remaining counts.

On December 3, 1998, Plaintiff hand-delivered a letter to this court. Plaintiff argued that a case decided on November 12, 1998, by the Federal Circuit Court of Appeals, *3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373 (Fed.Cir.1998), is dispositive of the patent infringement issue. On December 8, 1998, this court received a letter from Defendants responding to Plaintiff's citation of the *3D Systems* case.

## ANALYSIS

■ The issues before this court have been significantly narrowed based upon Plaintiff's agreement that its copyright infringement claim should be dismissed and Defendants' concession that Plaintiff's proposed Third Amended Complaint is sufficient to cure the pleading deficiencies raised in their Motions to Dismiss. This court notes that, contrary to Defendants' arguments in their Motions to Dismiss, civil conspiracy is a recognized cause of action in Illinois. *Adcock v. Brakegate, Ltd.*, 247 Ill.App.3d 824, 187 Ill.Dec. 428, 617 N.E.2d 885, 892 (1993); *Bally's Health & Tennis Corp. v. Almaui*, 1998 WL 102768, at *4 (N.D.Ill.1998).

The dispositive issue now before this court is whether Plaintiff has established that a genuine issue of material fact exists regard-

ing whether an act of patent infringement occurred in the United States.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c); see also *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548. The party opposing the motion must then make a showing sufficient to demonstrate the existence of a material issue for trial. *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548 (1986). In ruling on a motion for summary judgment, a district court has one task and one task only: to decide, based upon the evidence of record, whether there is any material dispute of fact that requires a trial. *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir.1994). Neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment. *Hoffman v. MCA, Inc.,* 144 F.3d 1117, 1121 (7th Cir.1998).

## II. PATENT INFRINGEMENT

 The statute relevant to the issue before this court provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, *within the United States* ... infringes the patent." 35 U.S.C. § 271(a) (1994) (emphasis added). This provision and related provisions "are intended to grant a patentee a monopoly only over the United States market; they are not intended to grant a patentee the bonus of a favored position as a flagship company free of American competition in international commerce." *Deepsouth Packing Co. v. Laitram Corp.,* 406 U.S. 518, 523, 92 S.Ct. 1700, 32 L.Ed.2d 273 (1972). The statute makes it clear that it is not an infringement to make or use a patented product outside of the United States. *Deepsouth,* 406 U.S. at 527, 92 S.Ct. 1700. To the degree that an inventor needs protection in markets other than those of this country, he must seek it abroad through patents secured in countries where his goods are being used. *Deepsouth,* 406 U.S. at 531, 92 S.Ct. 1700. Accordingly, it is not disputed that there is a territorial limit to the reach of the United States' patent laws, and infringement of the rights conferred by a patent cannot be predicated on acts wholly done in a foreign country. *Rothschild v. Ford Motor Co.,* 2 F.Supp.2d 941, 946 (E.D.Mich.1998). To have a cause of action for patent infringement, the burden is on the plaintiff to establish at least one instance of actual infringement in the United States. *Ductmate Ind., Inc. v. Lockformer Co.,* 1985 WL 2179, at *3 (N.D.Ill.1985).

Plaintiff does not dispute that Defendants did not make, use or sell a patented invention in the United States. In addition, Plaintiff does not argue that Tucker's design work in the United States infringed its patent under § 271(a). The only issue is whether Defendants "offered to sell" a patented invention within the United States.

Based upon Plaintiff's Responses to Defendants' Statements of Undisputed Facts, the following pertinent facts are undisputed in this case.

On August 9, 1995, the Chinese government announced that it was soliciting bid proposals for concrete placing equipment to be used in the construction of the Three Gorges Dam. MC and Potain discussed preparing and submitting a bid for the concrete placing system. Tucker was contacted by C.S. Johnson in September 1995 regarding participating in the bid. Tucker flew to Yichang, China, in October 1995 to attend a formal pre-qualifying bid conference. Tucker then began designing the conveyor components to be used in the systems in Oregon.

On January 15, 1996, Potain and MC jointly submitted a proposal to supply the equipment. The parties negotiated for nearly a year, and MC's contract with the Chinese government for the design, manufacture and purchase of two tower crane and conveyor systems was signed in Yichang, China, on

December 16, 1996. Potain was to design and manufacture the cranes used in the systems. Potain manufactured all of the tower crane components for the systems in France and China. C.S. Johnson was to design and manufacture the conveyor component of the systems. All of the procurement and manufacturing of the conveyor components and parts was to be performed in China and Japan. Tucker stopped working for C.S. Johnson in April 1997 because of that company's financial difficulties. Nippon Conveyor Co., Ltd. of Japan (NCC) then took over C.S. Johnson's responsibilities and hired Tucker to continue the design work for the systems. The conveyor components were not manufactured in the United States. The systems will be assembled at the Three Gorges Dam in China. Plaintiff's patent expired on March 7, 1998.

In their Statements of Undisputed Facts, Defendants stated that all of the negotiations with the Chinese government occurred in China and none of the negotiations occurred in the United States. In their Reply filed on November 24, 1998, they submitted excerpts from the deposition of C.S. Johnson's president, Allen Seeland, to establish that the bid proposal submitted by MC was finalized in Hong Kong in January 1996 and was submitted to the Chinese government in Yichang, China. In addition, the bid proposal was opened in China.

In its Response, Plaintiff contests Defendants' assertion that all of the negotiations occurred in China and asserts that a delegation from China visited C.S. Johnson's headquarters in Champaign, Illinois, during the week of December 8, 1996. Plaintiff also contends that "substantial activity prefatory" to the January 15, 1996, proposal occurred in the United States. Plaintiff relies on Tucker's statement in his Supplemental Affidavit that he prepared pricing information and worked on finalizing the bid proposal at C.S. Johnson's facility in Illinois. It also relies on a January 9, 1996 "Appendix" prepared by Allen Seeland which stated that C.S. Johnson had provided relevant technical and financial documents to Potain "to be used as an integral part in the bid." Plaintiff further contends that, while the contract eventually

signed provided for procurement and manufacturing to occur in China and Japan, there was a question of fact regarding whether the bid proposal made by Defendants to the Chinese buyer contemplated the manufacture of the conveyor components in the United States.

In this case, as noted, the only real issue is whether an "offer to sell" was made in the United States, in violation of § 271(a). Plaintiff was allowed to seek discovery from Tucker, who is located in the United States and is the Defendant most likely to have information and documentation regarding any infringing activities which occurred in the United States. Following this discovery, Plaintiff has cited few facts to support its argument that an act of patent infringement occurred in the United States.

■ Plaintiff has attempted to make an issue regarding whether Defendants originally intended that some components were to be manufactured in the United States, apparently arguing that this would be a violation of § 271(f). Defendants deny that there was ever an intention to manufacture any of the components in the United States. In any case, § 271(f) only prohibits supplying components of a patented invention in or from the United States so that the assembly of the components may be completed abroad. 35 U.S.C. § 271(f); *Enpat, Inc. v. Microsoft Corp.,* 6 F.Supp.2d 537, 538 (E.D.Va.1998); *Rothschild,* 2 F.Supp.2d at 946–47. Because there is no dispute that the December 1996 contract called for all of the conveyor components to be manufactured in Japan and China, and it is undisputed no components were manufactured in the United States, any dispute regarding whether earlier proposals contemplated manufacture in the United States simply is not a genuine issue of material fact under § 271.

In addition, Plaintiff asserts that a delegation from China attended a meeting in Illinois in December 1996. Plaintiff contends that this meeting shows that an "offer to sell" was made in the United States. Defendants, in their Reply, do not agree that such a meeting occurred. They attached a portion of Tucker's Answers to Interrogatories to their Reply. In response to Plaintiff's Inter-

rogatories, Tucker listed all meetings he attended concerning any "tower crane-based concrete conveyor delivery system(s)" and all other companies or individuals in attendance. Tucker listed 26 meetings between April 18, 1995, and November 18, 1997, which occurred in Illinois, France, China, Hong Kong, Japan and Oregon. According to Tucker's Answers, no one from China attended any meeting in the United States. In fact, Tucker's Answers state that the only meetings attended by the Chinese buyer occurred in China.

In support of its contention that a December 1996 meeting occurred in Illinois, Plaintiff relies solely on the Declaration of A. Stephen Ledger, Plaintiff's president. In his Declaration, Ledger states:

> On Sunday, December 8, 1996, I met at Al Seeland's home in Glen Ellen, Illinois, with a delegation from [the China Yangtze Three Gorges Project Development Corporation (CTGPC)], including Mr. Zhou Yong Fu, who was responsible for working with Rotec and CTGPC's contractor at the Three Gorges Dam site on matters relating to the Towerbelt ™, Rotec's patented tower crane-based concrete placement system. Prior to that meeting, Al Seeland informed that the delegation had spent the preceding two or three days at C.S. Johnson's headquarters in Champaign, Illinois conducting business relating to the Three Gorges Dam Project.

▮ Although Plaintiff deposed Allen Seeland, no excerpts from his deposition substantiating that this meeting took place have been included by Plaintiff. Accordingly, the only documentation that a meeting took place between the Chinese delegation and C.S. Johnson, which may have involved an offer to sell the systems, is a statement Ledger claims Seeland made to him on December 8, 1996. Ledger does not claim to have personal knowledge that the meeting took place and does not claim to have any knowledge as to the matters discussed at the meeting. It is well settled that a party opposing a motion for summary judgment must rely on "competent evidence of a type otherwise admissible at trial." *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir.1996). Accordingly, "a party may

not rely upon inadmissible hearsay in an affidavit or deposition to oppose a motion for summary judgment." *Bombard*, 92 F.3d at 562; see also *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 367–68 n. 1 (7th Cir.1997). Here, Ledger's declaration is based upon hearsay and lacks the personal knowledge required to be admissible. See *Pirelli Armstrong Tire Corp. v. Titan Tire Corp.*, 4 F.Supp.2d 794, 800 (C.D.Ill.1998). As a result, Ledger's declaration regarding Seeland's statement is inadmissible hearsay and is "incompetent evidence to oppose summary judgment." *Bombard*, 92 F.3d at 564.

▮ The only remaining facts cited by Plaintiff to support its argument that an "offer to sell" was made in the United States are Tucker's statement that he prepared pricing information and worked on finalizing the bid proposal in Illinois and Seeland's "Appendix" which states that C.S. Johnson provided information which was "integral" to preparing the bid made in January 1996 in China. Plaintiff argues that these facts show that "substantial activity prefatory" to the sale occurred in the United States.

In making this argument, Plaintiff relies on case law under 35 U.S.C. § 102(b). See *Lifting Technologies, Inc. v. Dixon Industries, Inc.*, 1996 WL 653391, at *3 (D.Mont. 1996) (court considered case law under § 102(b) of the Patent Statutes in determining whether an "offer to sell" under § 271(a) was made). Plaintiff notes that cases have held that if substantial activity prefatory to the sale occurs in the United States, the product is "on sale" in the United States under § 102(b). See *Robbins Co. v. Lawrence Mfg. Co.*, 482 F.2d 426, 434 (9th Cir. 1973); *RCA Corp. v. Data General Corp.*, 887 F.2d 1056, 1062 (Fed.Cir.1989) (offer does not need to meet all of the requirements necessary for a formal offer under contract principles to be "on sale"); but *cf. B.F. Goodrich Co. v. Aircraft Braking Systems Corp.*, 825 F.Supp. 65, 72–73 (D.Del. 1993) (where offer is made abroad, but substantial other activities relating to the offer occur in the United States, including telephone communications and preparation of proposals, activities do not rise to the level of

"substantial" and do *not* satisfy "on sale in this country" provision).

However, as noted by Plaintiff in its December 3, 1998, letter, the issue of "offer to sell" under § 271(a) was recently addressed by the Federal Circuit in *3D Systems.* The Federal Circuit has exclusive jurisdiction over an appeal from a district court when that court's jurisdiction is based at least in part on a claim arising under the patent laws of the United States. *3D Systems,* 160 F.3d 1373, 1377 (citing 28 U.S.C. §§ 1295(a), 1338(a) (1994)). One of Congress' primary objectives in creating the Federal Circuit was to bring about uniformity in the area of patent law. *Lifting Technologies, Inc.,* 1996 WL 653391, at *2.

In *3D Systems,* the Federal Circuit noted that it was presented with a case of first impression as the phrase "offer to sell" was recently added to § 271(a) "to conform United States law to the April 1994 Uruguay Round's Trade–Related Aspects of Intellectual Property (TRIPS) agreement." *3D Systems,* 160 F.3d 1373, 1378; see also *Finnsugar Bioproducts, Inc. v. Raytheon Engineers & Constructors, Inc.,* 1998 WL 703463, at *2 (N.D.Ill.1998). The court then found that, as a matter of federal statutory construction, price quotations sent by an out-of-state defendant to California residents were "offers to sell" in California. *3D Systems,* 160 F.3d 1373, 1379. The court based this conclusion on the substance conveyed in the letters, a description of the allegedly infringing merchandise and the price at which it could be purchased. *3D Systems,* 160 F.3d 1373, 1379. The court specifically declined to import the authority construing the "on sale" language of 35 U.S.C. § 102(b) into the "offer to sell" provision of § 271(a). *3D Systems,* 160 F.3d 1373, 1379, n. 4.

Plaintiff contends that *3D Systems* supports its position because the bid proposal submitted by Defendants to the Chinese government was clearly an "offer to sell." It further argues that the "offer to sell" must be considered to have originated in the United States because Tucker and C.S. Johnson were located in the United States, pricing information was prepared in the United States, and the proposal for the sale of the conveyor components was finalized by Tucker in the United States.

However, in *3D Systems,* the issue was whether an "offer to sell" was made in California for purposes of determining whether the district court in California had personal jurisdiction over the out-of-state defendant. The court in *3D Systems* found that an actual "offer to sell" was made by the defendant in California, based upon the fact that letters the defendant sent to California included a description of the merchandise and its purchase price. Here, Defendants have submitted evidence, not contradicted by any competent evidence presented by Plaintiff, that the bid proposal for the systems was finalized at a meeting in Hong Kong, that the bid proposal was presented in China, that all negotiations with the Chinese government prior to signing the contract occurred in China, and that the contract was signed in China. This court concludes, based upon *3D Systems* and the facts presented in this case, that no genuine issue of fact exists regarding whether an actual "offer to sell" was made by Defendants in the United States. The uncontradicted evidence shows that the actual "offer to sell," including the description of the product and the proposed price (see *3D Systems,* 160 F.3d 1373, 1379), was made in China. Consequently, Plaintiff cannot establish an essential element to its cause of action for patent infringement, an act of infringement in the United States. See *Ductmate Ind., Inc.,* 1985 WL 2179, at *3. The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. As a result, all of the Defendants, including MIC, are entitled to summary judgment on count I of Plaintiff's Second Amended Complaint.

### III. CONCLUSION

Defendants are entitled to summary judgment on count I of Plaintiff's Second Amended Complaint, and Plaintiff's have conceded that count II should be dismissed. This court further notes that a civil conspiracy count is valid only so long as the count that

alleges underlying wrongful acts is valid. *Nichols Motorcycle Supply, Inc. v. Dunlop Tire Corp.*, 1994 WL 698486, at *1 (N.D.Ill. 1994). Accordingly, counts V and VI of Plaintiff's Second Amended Complaint, alleging civil conspiracy to commit patent infringement and civil conspiracy to commit copyright infringement, must also be dismissed.

By granting summary judgment for Defendants on Plaintiff's patent infringement claim and by dismissing Plaintiff's copyright infringement claim, this court has dismissed the only counts of Plaintiff's Second Amended Complaint which support federal jurisdiction. " '[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.' " *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 727 (7th Cir.), cert. denied, — U.S. ——, 119 S.Ct. 167, 142 L.Ed.2d 136 (1998) (quoting *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir.1994)). Cases involving difficult and unresolved issues of state law may well be adjudicated more accurately and more expeditiously in a state court. *Centres, Inc. v. Town of Brookfield, Wis.*, 148 F.3d 699, 704 (7th Cir.1998). In addition, respect for the state's interest in applying its own law, along with the state court's greater expertise in applying state law, are paramount concerns. *Kennedy*, 140 F.3d at 728. Based upon these considerations, this court, in its discretion, declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. See 28 U.S.C. § 1367(c)(3); *Kennedy*, 140 F.3d at 727–28. Accordingly, there is no need for this court to rule on the sufficiency of counts III, IV, VII, and VIII of Plaintiff's Second Amended Complaint or to allow Plaintiff to file its proposed Third Amended Complaint in this court. Counts III, IV, VII and VIII are dismissed without prejudice, allowing Plaintiff to refile the cause in state court.

IT IS THEREFORE ORDERED:

(1) Summary judgment is granted in favor of Defendants on count I of Plaintiff's Second Amended Complaint.

(2) Counts II, V and VI are dismissed with prejudice.

(3) Counts III, IV, VII and VIII are dismissed without prejudice, allowing Plaintiff to refile the cause in state court.

(4) For the reasons stated, Defendants' Motions to Dismiss (# 45, # 47, # 80) are GRANTED. This case is terminated. The parties shall be responsible for their own court costs.

### ORDER

On December 14, 1998, this court entered an Order (# 111) which granted summary judgment in favor of Defendants on Count I of Plaintiff's Second Amended Complaint. In the Order, this court also dismissed Counts II, V and VI with prejudice and declined to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. Accordingly, the case was terminated.

On December 29, 1998, Plaintiff, Rotec Industries, Inc., filed a Motion for Reconsideration of the Order granting Summary Judgment or, in the alternative, for leave to conduct limited discovery (# 113). Plaintiff argues that this court misconstrued the applicable law and misinterpreted critical facts of record.

Defendants, Mitsubishi Corporation, Tucker Associates, Inc. and Garry Tucker, filed a Response (# 114) to Plaintiff's Motion for Reconsideration on January 8, 1999. Defendants contend that this court properly granted summary judgment. Defendants argue that this court correctly found, based upon the facts before it and the applicable law, that no act of patent infringement occurred within the United States.

Following a careful review of Plaintiff's Motion and Defendants' Response, this court concludes that Plaintiff was allowed adequate time and opportunity to conduct discovery prior to filing its Response to Defendants' Motions to Dismiss. Further, this court stands by its conclusion that the documents submitted by Plaintiff failed to raise a genuine issue of material fact regarding whether Defendants "offered to sell" a patented invention within the United States. As a consequence, Plaintiff's Motion for Re-

consideration of the Order granting Summary Judgment or, in the alternative, for leave to conduct limited discovery (# 113) is DENIED.